## Sucesión Valdés, Demandante y Apelada, *v.* Acevedo, Demandado y Apelante.

Apelación procedente de la Corte de Distrito de Mayagüez en causa sobre cobro de dinero.

No. 1342.—Resuelto en abril 25, 1916.

Fianza—Artículos 1250 y 1728 del Código Civil—Garantía Determinada—Refacción Agrícola.—De acuerdo con los artículos 1250 y 1728 del Código Civil, la garantía prestada por un fiador de que responderá de cierta cantidad que para refacción agrícola ha de entregarse a su fiado y también del incumplimiento de otras obligaciones que son objeto del contrato, es determinada o limitada en cuanto a dinero entregado para la refacción y no hace responsable al fiador de las cantidades que en exceso de aquella suma se entreguen a su fiado para la refacción.

Los hechos están expresados en la opinión.
Abogado del apelante: *Sr. Benito Forés.*
Abogado de la apelada: *Sr. Leopoldo Feliú.*

El Juez Asociado Sr. Aldrey, emitió la opinión del tribunal.

En 30 de marzo de 1911 se celebró un contrato por docu-

mento privado entre Ramón Valdés Cobián como dueño de la Central Ana María, y Rafael Ufret 2°., al que concurrió la esposa de éste, Amelia Gutiérrez, que había de estar en vigor hasta el 30 de junio de 1913, comprendiendo las zafras de 1912 a 1913; y por el cual Ufret se comprometió a tener sembradas y en cultivo para la cosecha de 1911 a 1912, sesenta cuerdas de terreno con cañas de azúcar, e igual cantidad para las zafras siguientes, obligándose a entregar dichas cañas a título de compraventa a Valdés durante la época de la molienda comprendida entre los meses de enero a junio, ambos inclusives, de 1912; en el mismo contrato Valdés se comprometió a facilitar al colono Ufret $800 en cantidades parciales durante el primer año del contrato previo recibo y según las fuera solicitando Ufret para el sostenimiento y cultivo de dichas cuerdas de tierra y para el corte, recolección y transporte de las cañas que las mismas produjeren, cantidades que devengarían interés del 10 por ciento anual desde su entrega hasta su pago, el cual se verificaría con el producto de las cañas contratadas hasta donde alcanzare éste, y el resto en efectivo. La deuda se consideraría vencida de año en año al terminar la molienda de las últimas cañas remitidas por el colono, y en cualquier caso el 30 de junio de 1912 en que concluía la zafra, y si verificada la liquidación el producto de las cañas no cubriese la deuda, la central podía suspender la entrega de nuevas cantidades y ejercitar su acción de cobro o llevar el saldo insoluto al crédito de refacción para la zafra subsiguiente. El precio de las cañas sería el importe de seis libras de azúcar al precio que tuviese en el mercado de New York en el mes anterior, descontando veinte y cinco centavos por quintal de azúcar para los gastos de flete, comisión, etc., y se determinaría el abono correspondiente a cada mes por liquidación que habría de efectuarse durante la primera quincena del mes subsiguiente. Se convino también que Valdés tendría el derecho de prorrogar el contrato si Ufret no cubría su cuenta por anticipos e intereses con la entrega de sus cañas, derecho que Ufret conce-

dió a Valdés expresamente obligándose al otorgamiento de los documentos que fueren necesarios. Asimismo se convino que las cañas que Ufret obtuviera por compra a otras personas las entregaría a Valdés bajo las mismas condiciones, obligaciones y precios que a las suyas se refiere el contrato, y que en cuanto al dinero que Ufret necesitara para la compra de tales cañas se haría oportuna y previamente un contrato especial entre las partes comprendiendo las cantidades que se hubieran de adelantar por la central, modo de garantizar su pago, reintegro, etc.

Ese contrato, que en lo sustancial hemos expuesto, fué garantizado por el apelante Ramón Acevedo de la siguiente manera:

"Que está enterado, por haberlas leído, de todas las condiciones de este contrato, y que, en consideración a que éste se celebra por la central con el Sr. Ufret o sea el colono, y que aquélla se obliga a adelantar a éste la cantidad en dicho contrato estipulada de $800, se compromete y obliga a garantizar y responder, y por la presente garantiza y se obliga a responder del pago de dicha suma, con sus intereses, así como del fiel y exacto cumplimiento de este contrato y de todas y cada una de sus condiciones, a favor de dicha central por parte del referido Sr. Ufret 2°., quedando y dejando vigente esta garantía mientras lo esté el ameritado contrato, o adeude el Sr. Ufret a la central cantidad alguna por virtud del mismo."

En 20 de octubre del mismo año las partes contratantes antes mencionadas, pero sin intervención de Ramón Acevedo, hicieron en el contrato referido la modificación de que Valdés facilitaría a Ufret $800 durante el año 1912 a 1913 para el cultivo de las cañas mencionadas, cantidad que entregaría parcialmente, siendo convenido que esta cláusula se tendría y consideraría como adicional al anterior contrato, quedando como una de sus condiciones y cláusulas en vigor y subsistencia.

En 12 de febrero de 1913 celebraron las partes otro contrato también sin la intervención de Acevedo, por el que convinieron en dejar desde esa fecha prorrogado el contrato

de 30 de marzo de 1911 por dos años contados desde el 1°.
de julio de 1913 comprendiendo las zafras de 1913–14, y
1914–15, obligándose al fiel y exacto cumplimiento de las
cláusulas del anterior contrato con las modificaciones siguien-
tes: que Ufret recibiría de Valdés el 13 de febrero la suma
de $400 y $600 más el día último de febrero para las aten-
ciones de las cañas, con sujeción a las condiciones del con-
trato prorrogado, y que el precio que se ha de pagar por las
cañas tendría el descuento de treinta centavos en vez de veinte
y cinco que se estipuló en el anterior contrato.

Para la cosecha de 1911–12 la central abrió una cuenta
a Ufret en la que aparecen cargadas al debe dos partidas
de $400 y otras más a cuenta de cañas y abonadas distin-
tas cantidades por entrega de cañas, cuenta que balanceada
en 11 de junio de 1912 arroja un saldo de $596.80 en contra
de Ufret.

Para la zafra de 1912 a 1913 se abrió otra cuenta a Ufret
que comenzó en 27 de octubre de 1911, en la que aparecen
cargadas distintas cantidades y abonadas otras por entrega
de cañas y balanceada en 16 de junio de 1913 arroja un debe
en contra de Ufret de $1,490.65.

Habiendo demandado Valdés a los esposos Ufret y a Ra-
món Acevedo para que le pagasen el importe de esos saldos
y sus intereses, recayó sentencia condenatoria contra dichos
esposos y contra Acevedo como fiador, contra la cual inter-
puso este último el presente recurso de apelación con súplica
de que revoquemos el fallo y lo absolvamos de la condena
fundándose en que la corte inferior cometió, al dictar su
sentencia, varios errores.

Sostiene el apelante en su alegato que el tribunal infe-
rior cometió error al dictar la sentencia apelada en la que
se le condena como fiador a pagar la cantidad reclamada
en la demanda porque interpretó indebidamente la garantía
que prestó al contrato de 30 de marzo de 1911 ya que no puede
dársele otra interpretación que la de que garantizó los ocho-
cientos pesos que de acuerdo con el contrato habían de entre-

garse a Ufret para el cultivo de la cosecha que había de molerse en el año 1912, pero que no garantizó los otros ochocientos pesos que, según convenio posterior en que no intervino, habían de entregarse para el cultivo y recolección del otro cosecho de 1913 ni tampoco las cantidades que se entregasen a Ufret para la compra de cañas a otras personas ya que la manera de hacer estas entregas y de garantizar su pago debía ser objeto de otro contrato.

No hay duda alguna, y en esto convienen las partes de este recurso, que Acevedo garantizó el pago de los ochocientos pesos que se habían de entregar a Ufret para refacción de sus fincas pues expresamente lo consigna así en su garantía, mas en vista de la condena que respecto del apelante contiene la sentencia recurrida, surge la discusión entre las partes sobre si la garantía prestada por Acevedo alcanza a más de los ochocientos pesos que éste acepta que garantizó. Esta es realmente la cuestión fundamental en este pleito.

Respecto a las cantidades que Valdés suministrara a Ufret para la compra de cañas de otras personas es claro para nosotros que su pago no estaba garantizado por el apelante ya que en el contrato se estipuló expresamente que la entrega de esas cantidades, su reintegro y modo de garantizar su pago sería objeto de otro convenio especial y no puede haber duda respecto a la voluntad de las partes acerca de este particular. En cuanto a estas cantidades, y como materia de hecho, no consta de la prueba que la central entregara dinero alguno a Ufret para que comprara cañas de otros, aunque él entregó durante la molienda cañas ajenas, ni que el saldo que se le reclama y que se le ordena pagar esté compuesto con partidas de dinero entregadas con ese fin.

Pero el apelante garantizó además a Ufret en el fiel cumplimiento de todas y de cada una de las condiciones del contrato y se obligó a dejar subsistente su garantía mientras lo estuviese el contrato que garantizaba o mientras Ufret adeudare cantidad alguna por virtud del mismo.

Las pruebas demuestran que para el cultivo y recolección de la zafra de 1912 se entregaron por la central a Ufret otras cantidades a más de los ochocientos pesos a que se refiere expresamente el contrato y que la entrega de cañas hecha por Ufret no cubrió las varias partidas de dinero entregadas a él, resultando un saldo en su contra de $596.80, y que lo mismo ocurrió con la otra zafra de 1913, aunque esta vez el saldo en contra de Ufret fué mucho mayor. ¿Garantizó Acevedo el pago de las cantidades que en exceso de ochocientos pesos se entregaron a Ufret para la refacción? Veámoslo.

Como vamos a interpretar el alcance y extensión de la fianza prestada por el apelante, bueno es tener presente que entre las reglas de interpretación de los contratos se halla la del artículo 1250 del Código Civil según la cual, cualquiera que sea la generalidad de los términos de un contrato, no deberán entenderse comprendidas en él cosas distintas y casos diferentes de aquellos sobre los que los interesados se propusieron contratar; y que los contratos de fianza, por su especial naturaleza, dado que se adquieren obligaciones generalmente sin remuneración, son de interpretación estricta, tienen que estar limitados por la convención y, según dice el artículo 1728 del Código Civil, no se presumen, deben ser expresos y no pueden extenderse a más de lo contenido en ellos, aunque si son simples o indefinidos comprenderán además de la obligación principal, sus acccesorias.

Como este precepto últimamente citado del código permite que la fianza se extienda no sólo a la obligación principal sino también a las accesorias que son consecuencia de ella, hemos de considerar los términos de la fianza en este caso para determinar por ellos si se trata de una fianza definida o limitada, en cuyo caso sólo responde de la obligación expresamente garantizada, o si, por el contrario, sus términos son generales o indefinidos, en cuyo caso la responsabilidad del fiador se extiende también a todas las obligaciones propias del fiado resultantes del contrato garantizado. En este caso

estará garantizada no sólo la obligación principal sino también sus consecuencias.

El camino, pues, para decidir este pleito es determinar si se trata de una fianza limitada expresamente a garantizar una o varias obligaciones del fiado o si está concebida en términos tan generales que no ha de entenderse limitada la responsabilidad del fiador a determinadas obligaciones sino también a las consecuencias naturales del incumplimiento del fiado. Para ello tenemos que hacer un resumen de las obligaciones de Ufret en el contrato garantizado en 30 de marzo de 1911 y de los términos de la fianza.

Ufret se obligó a cultivar determinado número de cuerdas de terreno con cañas de azúcar para las moliendas de 1912 y de 1913; a devolver los ochocientos pesos, con sus intereses que el primer año debía entregarle la central para refacción; a vender todas sus cañas a la central y también las que adquiriese de otras personas.

El apelante Acevedo garantizó el pago de los ochocientos pesos que según el contrato habían de entregarse por la central a Ufret durante el primer año del contrato y también sus intereses; garantizó que Ufret cumpliría el contrato en todas sus partes y se obligó a dejar subsistente su garantía mientras estuviere vigente el contrato o mientras éste adeudase alguna cantidad por virtud del mismo.

El único incumplimiento del contrato por parte de Ufret que alega la demanda es el de no haber pagado la cantidad de $2,148.04, saldo integrado en los dos años del contrato por la entrega de los $800 a que se refiere el convenio de 30 de marzo de 1911 y de otras cantidades más para refacción.

Tomando en consideración las obligaciones de Ufret y la fianza del apelante y teniendo presente las reglas de derecho que hemos consignado antes, tenemos que llegar a la conclusión de que en cuanto a dinero entregado, Acevedo sólo garantizó la devolución de ochocientos pesos y sus intereses que según el contrato habían de entregarse a Ufret durante el primer año del contrato, pues así lo consignó expre-

samente en su fianza, cantidad que fué cubierta por su fiado con el abono que en febrero 6 de 1912 hizo por $3,005.53 en cañas. Que esta interpretación es correcta lo demuestra el acto posterior de la central y de Ufret conviniendo en la cantidad que había de ser entregada para la refacción del cosecho de 1912–13. Así pues Acevedo no garantizó el pago de las cantidades que en exceso de $800 se entregaron a su fiado. El apelante, en cuanto a entrega de dinero a su fiado, limitó expresamente su garantía a la cantidad de $800 y sus intereses y por tanto, no puede hacérsele responsable de cantidades distintas facilitadas que, por otra parte, no podrían estimarse como consecuencia del contrato que garantizó pues aunque Ufret tenía la obligación de cultivar y entregar cañas en las moliendas de 1912 y 1913 no era absolutamente necesario para que Ufret cumpliera esa parte del contrato que la central le facilitara más dinero de aquel que expresamente garantizó Acevedo.

La garantía, pues, de Acevedo, fué de responder hasta $800 y sus intereses y de que Ufret cumpliría las demás condiciones del contrato. La generalidad de los términos de la fianza en cuanto a las obligaciones de Ufret que no fueran la de devolver los $800, no produce como consecuencia el que se facilitara al colono mayor cantidad que ésa y que el fiador esté obligado a pagar el exceso.

Por las razones expuestas debe ser revocada la sentencia apelada en cuanto a Ramón Acevedo y dictarse otra absolviéndolo de la demanda sin especial condena de costas.

> *Revocada la sentencia apelada en cuanto se refiere al apelante Ramón Acevedo, y dictada otra absolviéndosele de la demanda sin especial condenación de costas.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Hutchison.