BRUNET, SÁENZ & Co., S. EN C., DEMANDANTE Y APELANTE, *v.* APONTE ET AL., DEMANDADOS Y APELADOS.

No. 3268.—*Visto:* Mayo 29, 1924. *Resuelto:* Julio 12, 1924.

FIANZA—CUENTA CORRIENTE AFIANZADA—RESPONSABILIDAD DE LOS FIADORES.—En este caso los fiadores garantizaron una cuenta corriente del deudor hasta la suma de $5,000 durante un año; la cuenta alcanzó a $10,525.65 y el saldo de $4,362.65 fué reclamado a los fiadores. *Se resolvió:* que la cuenta corriente debe dividirse en cuanto a la garantía y los pagos que hizo el deudor en el curso de las operaciones durante el año deben ser aplicados en primer término a extinguir los créditos de efectos o especies facilitados por el acreedor por el orden de sus fechas más antiguas hasta donde alcance o cubra el límite de la obligación subsidiaria contraída por los fiadores.

ID.—INTERPRETACIÓN DE LOS TÉRMINOS DE UNA FIANZA.—Interpretando la fianza en cuanto expresa que los fiadores responden a las cobranzas que "por cualquier concepto" tengan que hacerse al deudor principal, *se resolvió:* que debiendo interpretarse restrictivamente toda materia referente a fianzas, tal expresión significa que los fiadores, dentro del límite de su obligación, no podrían discutir la naturaleza o procedencia de las partidas o créditos dejados de cubrir por el deudor principal, es decir, ya consistieren en dinero, especies o efectos de comercio.

SENTENCIA de *G. Castejón,* J. (Guayama), sosteniendo demanda contra un demandado y solamente en parte contra los otros. *Confirmada.*

*J. S. Alegría* y *F. Soto Gras*, abogados de la apelante; *C. Domínguez Rubio*, abogado de los apelados.

El Juez Asociado·Señor Franco Soto, emitió la opinión del tribunal.

Brunet, Sáenz & Ca. demandaron a Ignacio Aponte, como principal deudor y a sus fiadores Juan de Dios Santini, Domingo Colón Ortiz, Longinos Mercado y Alfonso Rodríguez en cobro de $4,362.65, alegando sustancialmente que el demandado Ignacio Aponte solicitó en cuenta corriente un crédito en la mercantil demandante hasta la suma de $5,000; que los codemandados arriba nombrados prestaron la fianza por el término de un año, comprometiéndose por la misma a satisfacer las cantidades que hasta $5,000 tuviera que reclamar del demandado Ignacio Aponte; que este último durante el año que estaba en vigor la fianza, tomó a la demandante efectos por valor de $10,525.65 y que como resultado de una liquidación la cuenta corriente arrojó un saldo de $4,362.65, que es la suma reclamada en la demanda.

Los fiadores contestaron negando ciertos hechos de la demanda y alegando como defensa que la fianza prestada fué para garantizar efectos que la demandante suministrara al deudor principal y que éste durante el término del año a que estaba limitada la garantía abonó la cantidad de $4,467.65, cuya suma saldaba aquellas partidas más antiguas a su cuenta y que en un reajuste de la cuenta hasta la suma de $5,000 con el demandado Aponte, le fué rebajada la suma de $540.45, en las compras y ventas hechas a la demandante, alegando en resumen que los abonos del deudor principal cubrían en exceso el importe de la cantidad que garantizaban los fiadores.

La corte inferior al declarar en parte con lugar la demanda en cuanto a los fiadores, les condenó al pago de $426.35, fundándose en síntesis en que durante el año que estaba en vigor la fianza, la demandante suministró efectos al deudor principal por $10,525.65, más del doble de la garantía, y que habiendo hecho abonos el deudor dentro del

período estipulado por $4,573.65, esta suma hasta $5,000 que es el montante de la fianza, produce una diferencia de $426.36, que es la cantidad a que se obliga al pago a los fiadores, en lugar de la suma de $4,362.65 que como saldo de la cuenta corriente reclama la demandante.

No conforme con la sentencia la demandante estableció este recurso y en su alegato señala la comisión de los siguientes errores, a saber:

"1. La corte inferior erró al darle un valor restrictivo a la fianza que motiva este caso a pesar de su texto amplio y general.

"2. La corte inferior cometió error al considerar que la fianza prestada por los codemandados Juan de Dios Santini, Domingo Colón Ortiz, Longino Mercado y Alfonso Rodríguez, no cubría el saldo deudor al ser liquidada la cuenta corriente existente entre el demandado Aponte y la demandante 'Brunet, Sáenz & Co., S. en C.' al año de su vencimiento.

"3. La corte inferior cometió error al considerar que los abonos hechos por el demandado Ignacio Aponte en el transcurso de la cuenta corriente extinguieron la obligación de los fiadores codemandados, confundiendo los términos de *abono, pago* e *imputación de pago*."

No obstante el número de errores apuntados, toda la cuestión en este caso se reduce a considerar los términos de la fianza y determinar la extensión de la misma en relación con la responsabilidad de los fiadores.

La fianza consta de dos cartas que literalmente dicen:

"Barranquitas, P. R.—Julio 27, 1921.—Sres. Brunet Sáenz & Co. —San Juan, P. R.—Muy Sres. nuestros: Nosotros, los abajo firmantes garantizamos al Sr. Ignacio Aponte por la suma de cinco mil dólares' ($5,000.00) para responder a las cobranzas que por cualquier concepto tengan que hacer contra dicho señor.—Damos a ustedes las gracias por la atención que a bien tengan prestar a la presente, suscribiéndonos, sus attos. y SS. SS.—(firmado) Longino Mercado.—D. Colón Ortiz.—J. D. Santini..—Alfonso Rodríguez.''

"Barranquitas, 31 de Julio de 1921.—Sres. Brunet Sáenz & Co., San Juan, P. R.—Muy Sres. nuestros: Nos permitimos anunciarles que la garantía que dimos a favor de Dn. Ignacio Aponte será sólo por un año a contar desde la fecha en que fué expedida.—Sin otro

particular, nos suscribimos, sus attos. y S. S. s. s. (firmado) J. D.
Santini.—D. Colón Ortiz.—Longinos Mercado.—Alfonso Rodríguez.''

Según se desprende de la redacción de las cartas trans-
critas, la fianza fué expresa y en ella quedó limitada la res-
ponsabilidad de los fiadores en cuanto al tiempo y a la can-
tidad que garantizaba la obligación principal.   No podía ex-
tenderse por más tiempo del estipulado ni exceder del lí-
mite de $5,000 acordado sin el consentimiento de los fiadores.
Sin embargo, la obligación principal del deudor rebasó la
garantía de $5,000 por haber suministrado efectos la deman-
dante al demandado Aponte dentro del año que subsistía
por $10,525.65, más del doble de la fianza.   Y siendo éste un
hecho no controvertido entre las partes, la cuestión toma un
carácter legal en cuanto a la aplicación del artículo 1728 del
Código Civil Revisado que dispone que la fianza no se pre-
sume: debe ser expresa y no puede extenderse a más de lo
contenido en ella.   En relación con el fin de este precepto,
estamos conformes con la cita y razonamiento que en el
curso de su opinión hace la corte inferior, expresando:

"El Tribunal Supremo, (de España) en sentencia de 16 de no-
viembre de 1900, ha establecido también el fundamento de dicha
disposición, diciendo que 'por lo mismo que la fianza es una obli-
gación especial *que no se presume,* es preciso que consten las que
contrae el fiador, o los límites de la fianza.'—Tanto esa misma sen-
tencia como otras de 29 de mayo de 1897 y de 24 de enero de
1901, han sancionado la doctrina establecida en el artículo que
examinaremos, elevándola a la categoría de principio indiscutible
de derecho aplicable, tanto a la fianza civil como a la mercantil.
En efecto; unánimemente se declara en dichas sentencias, que es
un principio de derecho sancionado expresamente por el artículo
1827 del Código Civil, que la fianza no se presume, sino que ha
de ser expresa y no puede extenderse más allá de lo contenido en
ella, cuyo precepto es aplicable al afianzamiento mercantil, por vir-
tud de lo dispuesto en el art. 50 del Código de Comercio.   Final-
mente, la citada sentencia de 16 de noviembre de 1900, añade que
siendo gratuito el contrato de fianza ha de interpretarse, cuando
se ofrezca duda sobre su extensión por la menor transmisión de
derechos conforme a lo prevenido en el art. 1289 del Código Civil,

relacionado con el 441 del Código de Comercio. Esta declaración de la jurisprudencia viene a confirmar también de una manera clara y explícita la afirmación que repetidamente hemos sentado, de que toda la materia relativa a la fianza es de interpretación estricta y aún restringida, lo cual constituye el fundamento jurídico de la segunda de las disposiciones que hemos dicho comprende el párrafo primero del artículo objeto de este comentario; disposición tan conforme con la naturaleza de este contrato, que sin la limitación consignada en ella, vendría la fianza a convertirse en una nueva y distinta convención separándose de su verdadero objeto.'' Manresa, tomo 12, págs. 234–235 (2ª ed.)—En el caso que nos ocupa y según se hace constar expresamente en la demanda, la fianza fué constituída para garantizar un crédito de cinco mil dólares que interesaba el demandado Aponte; y siendo esto así, es claro que tal obligación de fianza que es subsidiaria a la obligación principal, no puede extenderse en modo alguno a una suma mayor que la principal garantizada.—(Art. 1728 del Código Civil). 'La razón de ese precepto la hemos demostrado ya al ocuparnos del artículo anterior, y, por lo tanto, nos basta tan sólo indicar que siendo la fianza una obligación accesoria, no puede traspasar los límites de la obligación principal garantizada por la misma, pues en todo lo que exceda de ella, faltará obligación de que haya de depender o a la que debe *acceder.'* Manresa, tomo 12, página 234. Entendemos pues, que los fiadores demandados son responsables únicamente de un crédito por cinco mil dólares; y que habiendo facilitado la mercantil demandante efectos al demandado Aponte por una suma mayor que la referida, la garantía no alcanza en modo alguno a cubrir el exceso sobre dicha suma, ya que la fianza no puede extenderse a garantizar una suma mayor que la expresamente estipulada   *   *   *.''

El apelante insiste no obstante, en su tercer señalamiento de error fundándose en que la cuenta corriente es un todo indivisible y sus partidas pierden su calidad para convertirse en simples anotaciones en las columnas de su debe y haber; o en otros términos: que la cuenta corriente no es exigible en cuanto a sus saldos, pues los abonos hechos en el transcurso de la misma no pueden considerarse como pago ni imputarse a partida alguna de la cuenta corriente.

Pero no discutimos la naturaleza en sí de la cuenta corriente sino sus efectos como obligación principal en rela-

ción con la·responsabilidad de los fiadores. Si la fianza
sólo respondió de un crédito hasta $5,000 y el acreedor se
excedió concediendo un crédito al deudor principal por ma-
yor cantidad, lo natural es que la cuenta corriente se haga
divisible en cuanto a su garantía y los pagos que hace el
deudor en el curso de las operaciones durante el término
que subsista la fianza deben ser aplicados en primer tér-
mino a extinguir los créditos de efectos o especies facilita-
dos por el acreedor por el orden de sus fechas más antiguas
hasta donde alcance o cubra el límite de la obligación sub-
sidiaria contraída por los fiadores. Esta es una doctrina
que de un modo general se apuntó en el caso de la *Compa-
ñía Industrial de Santurce* v. *Sánchez, etc.,* 21 D.P.R. 191,
196, y con más amplitud sostenida en el caso de *Sucesión
Valdés* v. *Acevedo,* 23 D.P.R. 736, 742, en el que esta Corte
Suprema, por voz del Juez Aldrey, dijo:

"Tomando en consideración las obligaciones de Ufret y la fianza
del apelante y teniendo presente las reglas de derecho que hemos
consignado antes, tenemos que llegar a la conclusión de que en cuanto
a dinero entregado, Acevedo sólo garantizó la devolución de ocho-
cientos pesos y sus intereses que según el contrato habían de entre-
garse a Ufret durante el primer año del contrato, pues así lo con-
signó expresamente en su fianza, cantidad que fué cubierta por su
fiado con el abono que en febrero 6 de 1912 hizo por $3,005.53 en
cañas. Que esta interpretación es correcta lo demuestra el acto pos-
terior de la central y de Ufret conviniendo en la cantidad que ha-
bía de ser entregada para la refacción del cosecho de 1912-13. Así
pues Acevedo no garantizó el pago de las cantidades que en exceso
de $800 se entregaron a su fiado, limitó expresamente su garantía
a la cantidad de $800 y sus intereses y por tanto, no puede hacér-
sele responsable de·cantidades distintas facilitadas que, por otra
parte, no podrían estimarse como consecuencia del contrato que ga-
rantizó pues aunque Ufret tenía la obligación de cultivar y entregar
cañas en las moliendas de 1912 y 1913 no era absolutamente nece-
sario para que Ufret cumpliera esa parte del contrato que la cen-
tral le facilitara más dinero de aquel que expresamente garantizó
Acevedo.

"La garantía, pues, de Acevedo, fué de responder hasta $800 y

sus intereses y de que Ufret cumpliría las demás condiciones del contrato.    La generalidad de los términos de la fianza en cuanto a las obligaciones de Ufret que no fueran la de devolver los $800, no produce como consecuencia el que se facilitara al colono mayor cantidad que ésa y que el fiador esté obligado a pagar el exceso.''

Alega también la apelante que al consignarse en la fianza que los fiadores responden a las cobranzas que por cualquier concepto tengan que hacerse al deudor principal se refiere la misma a cualquier saldo de la cuenta corriente aun cuando el movimiento de las operaciones o el volumen de negocios dentro del año rebasara el contenido de la fianza.    Sin embargo, como ya hemos visto, es una regla general en la jurisprudencia que toda materia relativa a fianzas es de interpretación restrictiva y por aquellas palabras sólo podía significarse que los fiadores, dentro del límite de su obligación, no podrían discutir la naturaleza o procedencia de las partidas o créditos dejados de cubrir por el deudor principal, es decir, ya consistieren en dinero, especies o efectos de comercio.

· Por todo lo expuesto la sentencia de la corte inferior *debe confirmarse.*

El Juez Asociado Sr. Wolf no intervino en la resolución de este caso.

RECONSIDERACIÓN

*No. 3268.—Resuelto en junio 10, 1925.*

1. Principal y Fiador—Creación y Existencia de la Relación—Fianza Entre Individuos—Calificación de Fianza en Estados Unidos y Puerto Rico.—No existe paridad en la calificación de fianzas tal como las definen la jurisprudencia americana y el Código Civil.

2. Principal y Fiador—Creación y Existencia de la Relación—Fianza Entre Individuos—Ley que la Gobierna.—La jurisprudencia de otro estado referente a fianzas es obligatoria solo cuando la fianza es para tener efecto en dicho estado.

3. Principal y Fiador—Naturaleza y Extensión de la Responsabilidad del Fiador — Interpretación del Contrato de Fianza. — Siendo gratuito el contrato de fianza ha de interpretarse por la menor transmisión de derechos. (Arts. 1256 del Cód. Civ. Rev. y 441 del Cód. de Comercio.)

El Juez Asociado Señor Franco Soto, emitió la opinión del tribunal.

En la moción solicitando se reconsidere nuestra senten-

cia de julio 12, 1924, se alega que la cuestión fundamental del alcance e interpretación del documento de fianza no fué debidamente presentada, dejando de ponerse a la consideración de esta Corte Suprema los principios y reglas uniformes establecidos en casos análogos en la jurisprudencia.

Podría contestarse simplemente que se trata de la interpretación de preceptos del Código Civil Revisado en materia de fianza, ya interpretados por la jurisprudencia y comentaristas españoles y también por esta misma Corte Suprema, y que las citas de otras autoridades americanas es más bien ilustrativa de que aún dentro del conflicto de reglas que ellas sostienen, existen jurisdicciones en abono de la regla *strictissimo juris* que hemos aplicado a este caso.

Sin embargo, a fin de esclarecer mejor cierta confusión que mantiene el nuevo abogado de la apelante en los puntos de vista que con alguna extensión presenta, vamos a examinar con más amplitud las cuestiones que originalmente habían sido apuntadas y resueltas.

El contrato de fianza consta de dos cartas, que literalmente dicen:

"Barranquitas, P. R.—Julio 27, 1921.—Sres. Brunet Sáenz & Co. —San Juan, P. R.—Muy Sres. nuestros: Nosotros, los abajo firmantes garantizamos al Sr. Ignacio Aponte por la suma de cinco mil dólares ($5,000.00) para responder a las cobranzas que por cualquier concepto tengan que hacer contra dicho señor.—Damos a ustedes las gracias por la atención que a bien tengan prestar a la presente, suscribiéndonos, sus attos. y SS. SS.—(firmado) Longino Mercado.—D. Colón Ortiz.—J. D. Santini..—Alfonso Rodríguez."

"Barranquitas, 31 de Julio de 1921.—Sres. Brunet Sáenz & Co., San Juan, P. R.—Muy Sres. nuestros: Nos permitimos anunciarles que la garantía que dimos a favor de Dn. Ignacio Aponte será sólo por un año a contar desde la fecha en que fué expedida.—Sin otro particular, nos suscribimos, sus attos. y S. S. s. s. (firmado) J. D. Santini.—D. Colón Ortiz.—Longinos Mercado.—Alfonso Rodríguez."

[1] La apelante ahora sostiene que los términos de la fianza que se consideró limitada es de los llamados continuos en la nomenclatura de la jurisprudencia americana.

En el primer alegato del apelante se sostuvo por éste que la fianza era de carácter general indefinido y que por implicación cubría cualquier saldo del deudor principal dentro del límite de la cantidad de $5,000 a que montaba la fianza. La razón de la apelante entonces no era porque calificara la fianza de continua, o ilimitada la extensión del crédito, sino porque tratándose de una cuenta corriente entre acreedor y deudor principal dicha cuenta era indivisible y el abono o imputación de pagos no podía tomarse en cuenta sino al final de la liquidación. Se declaró, no obstante, que la teoría de la apelante podía mantenerse en cuanto al contrato principal entre las partes; pero no en relación con la responsabilidad de los fiadores, dados los términos de la fianza. En este punto es que se amplía la discusión del asunto en el nuevo alegato de la apelante alegando que se prestó más atención a las cuestiones secundarias como las de abonos, imputación de pagos a la cuenta corriente, cuando estas incidencias carecían de importancia por tratarse de una garantía de carácter continuo en que si bien la responsabilidad de los fiadores está limitada a la suma especificada, no lo está la extensión del crédito dentro del término o período fijado en el contrato. En relación con esto no se debe perder de vista que se trata de la interpretación de una fianza a la luz de disposiciones de nuestro Código Civil Revisado y podemos afirmar que no existe, como sostiene la apelante, paridad en la calificación de fianza tal como las definen las jurisprudencia americana y dicho Código Civil Revisado. En aquélla se encuentran casos en que una fianza de carácter indefinido se tiene por limitada tanto en la responsabilidad del fiador como en la extensión del crédito, y bajo el Código Civil sería lo contrario: la fianza indefinida tiene el carácter de continua.

En el caso de *Perryman* v. *McCall,* 41 Am. Rep. 753, la fianza estaba redactada en los siguientes términos:

"Leí la carta que usted escribió al Sr. J. R. Burns, para suminis-

trarle provisiones, y he visto que mi nombre lo pondría en condiciones de obtener una existencia de mercancías y continuar los negocios. El Sr. Burns creo le pidió a usted que le enviara la cuenta de provisiones que usted tiene. Ahora sírvase llenar dicha cuenta con excepción de un barril de whiskey South-Side, y remítalo por el primer vapor a Tuskaloosa. Permítame que le indique que yo recomiendo al Sr. J. R. Burns y espero que él será uno de sus mejores parroquianos. El Sr. Burns le enviará a usted unos cincuenta dólares por vapor; y como los negocios están malos y nuestra Corte de Circuito ha terminado, puede ser que—por ejemplo, hasta el primero de noviembre—en otoño no le pueda enviar a usted mucho dinero; pero él le remitirá lo que pueda durante el verano.''

Y la conclusión de la corte fué la siguiente:

''El pensamiento adicional de que Burns llegue a ser uno de sus mejores parroquianos es demasiado indefinido en sus términos para que la carta constituya una garantía constante.'' (p. 754.)

Veamos ahora las palabras del artículo 1728 del Código Civil Revisado, que dicen:

''La fianza no se presume: debe ser expresa y no puede extenderse a más de lo contenido en ella.

''Si fuere simple o indefinida, comprenderá no sólo la obligación principal, sino todos sus accesorios, inclusos los gastos del juicio, entendiéndose respecto de éstos, que no responderá sino de los que se hayan devengado después que haya sido requerido el fiador para el pago.''

[2] Estamos además considerando una garantía no sólo otorgada en esta Isla sino para tener efecto en la misma. Únicamente hubiéramos estado obligados a acudir a la jurisprudencia de los diferentes estados que cita la apelante si el contrato de fianza era para tener efecto en cualquiera de ellos. Y en los Estados Unidos la ley que gobierna es la del estado en que ha de surtir efecto la fianza.

Una carta de garantía escrita en los Estados Unidos y dirigida a una casa de Inglaterra debe ser interpretada de acuerdo con las leyes de esta última nación. *Bell* v. *Buren,* I How (U.S.) 169.

Cuando una fianza es otorgada en New York pero es otorgada para ser operativa en Ohio, su interpretación y la responsabilidad de las partes dependientes de la misma debe regirse por las leyes de Ohio. *Richardson* v. *Draper,* 23 Hin 188 (aff. 87 N. Y. 337). La misma doctrina se sienta en *McFarland* v. *Wadhams,* 177 Fed. 82, 99 C.C.A. 602 (rev. 165 Fed. 9871), y *John A. Telman Co.* v. *Reed,* 115 Mich. 71, 72 N.W. 1104.

[3] Pasando, por tanto, al campo de la jurisprudencia aplicable, pues el artículo 1728 es de procedencia española, la misma apelante afirma que la Corte Suprema de España no ha resuelto el caso concreto que nos ocupa. A pesar de esta declaración la apelante cita un caso reportado en el tomo 60 de la Jurisprudencia Civil, página 917, y se esfuerza en sostener que en él están envueltos los puntos de derecho que discute respecto a las diferencias existentes entre las garantías limitadas y continuas. Sin embargo, dicho caso ni remotamente puede tener aplicación al presente, pues se trata en aquél de un contrato de fianza en que los fiadores se constituyeron en principales pagadores, perdiendo, por tanto, su carácter de fiadores, convirtiéndose en codeudores y bajo este aspecto es que se estimó su responsabilidad ilimitada. En cambio, la cita que hizo la corte inferior de la sentencia de 16 de noviembre de 1900 del Tribunal Supremo de España (90 J.C. 656), sanciona la doctrina del artículo 1827 del Código Civil español, equivalente al 1728 del Código Civil Revisado, y en ella, en oposición a la regla de interpretación liberal de favorecer al acreedor en caso de duda en materia de fianzas, que trata de hacer prevalecer la apelante y que atribuye en general a la jurisprudencia americana, se establece inequívocamente el principio de que siendo gratuito el contrato de fianza, ha de interpretarse, cuando se ofrezca duda sobre su extensión, por la menor transmisión de derechos conforme a lo prevenido en el artículo 1289 del Código Civil, relacionado con el 441 del Código de Comercio. Y Manresa (tomo 12, págs. 234, 235,

Cód. Civ. Esp. art. 1827) al comentar dicha sentencia dice
que esa declaración de la jurisprudencia viene a confirmar
también de una manera explícita la afirmación repetidamente
sentada de que toda la materia relativa a la fianza es de in-
terpretación estricta y restringida. Habiendo sido, por con-
siguiente, nuestro Código Civil Revisado interpretado me-
diante tan importantes declaraciones procedentes de autori-
dades a las que generalmente acudimos como fuentes de
nuestro derecho civil substantivo, se hace necesario decir
que tales preceptos por la naturaleza de los mismos no son
una traba, como sostiene la apelante, a las transacciones co-
merciales, toda vez que siendo el fin del comercio el lucro,
parecería contrario al buen sentido que tal objeto se alcance
a costa de terceras personas, cuando no aparezca que se ha-
yan obligado expresamente o surjan dudas acerca de la ex-
tensión de su responsabilidad, ya que su intervención siendo
gratuita no tiene interés o participación en la negociación
sino que más bien el riesgo que corre su desinterés es para
beneficio de acreedor y deudor. Es más natural que corres-
ponda a estos últimos cuidarse de la clara y precisa redac-
ción de las fianzas y no dejar a las cortes para que en caso
de duda sean las llamadas a subsanar o llenar las deficien-
cias u omisiones que resulten de tales documentos. Y si a
esto añadimos que en muchas ocasiones los contratos de
fianza se redactan por personas que no conocen el alcance
de las palabras que tienden a establecer la extensión de la
responsabilidad del fiador y especialmente en el comercio
portorriqueño que en general no ha estado acostumbrado al
tecnicismo de las palabras que en inglés implican la respon-
sabilidad ''continua'' de un fiador, y su significación, como
hemos visto, no está en armonía con lo que prescribe nues-
tro Código Civil, aparece claro con más énfasis la necesidad
de aplicar la regla de *strictissimi juris,* esto es, que el con-
trato de fianza no puede extenderse por interpretación o
implicación más allá de sus precisos términos. Además,
esta misma regla la encontramos aplicada por autoridades

americanas.   En el caso de *Perryman* v. *McCall, supra,* se dice:

"Hablando de una garantía, en el caso de Douglass v. Reynolds, 7 Pet. 113 (U. S.) el juez Story,.de la Corte Suprema de los Estados Unidos, dijo lo siguiente: 'Siendo un compromiso por la deuda de otra persona, ciertamente no existe ninguna razón para darle una significación más amplia o una interpretación liberal que esté fuera del significado razonable de sus términos.   *   *   *   La ley obliga a un hombre, que no tiene ningún interés en la transacción, a pagar la deuda de otro solamente cuando su obligación manifiesta una clara intención de quedar obligado él mismo por esa deuda.' "   41 Am. Rep. 754.

Spencer, en su obra *Suretyship* se inclina en sentido de que para que surta efecto la responsabilidad del fiador en cuanto a la extensión del crédito, o en otros términos para que se considere continua la garantía, tiene que establecerse una estipulación expresa en el contrato de fianza y por consiguiente no es condición para presumirse.   Y sostiene al mismo tiempo como cuestión justa y razonable que el mero hecho de que el crédito se extienda más allá del límite de la fianza no es motivo para relevar al fiador de su responsabilidad dentro del límite de su fianza.   En tal respecto, en la página 137, párrafo 101, dice:

"A falta de una estipulación expresa de que la responsabilidad del garante ha de depender de que el crédito no se amplíe al deudor principal a más de la suma estipulada, el garante no está relevado de la obligación que tiene por la suma estipulada por el mero hecho de que está limitada la responsabilidad de dicho garante.   En tal caso el garante es responsable por la cantidad estipulada, pero no por el exceso."

En nuestro caso la fianza está limitada en la cantidad y en el tiempo.   Los términos eran precisos.   Y en cuanto a las palabras "para responder a las cobranzas que por cualquier concepto," resolvimos que se referían a la naturaleza o procedencia de las partidas del crédito pero no a su extensión.   El apelante insiste, sin embargo, que "concepto", "resultado de la relación entre el sujeto y objeto" según la

significación de la lengua, indica la consecuencia de las operaciones y alega que aún suponiendo que tales palabras impliquen el motivo, la procedencia del debe, ¿por qué también no se habían de referir al saldo deudor de la cuenta corriente? La misma apelante sugiere la duda. Su interpretación, sin embargo, es realmente forzada. Es una conclusión tal vez valiosa del nuevo abogado de la apelante, pero habría que llegar a ella más bien aplicando una operación especulativa, metafísica, como define el diccionario, a propósito para presunciones, pero incompatible para resolver cuestiones materiales, taxativas y expresas.

Según Rodríguez Navas, en su Diccionario de la lengua española, ''concepto'' significa lo que sigue:

''Concepto. m. Idea que concibe o forma el entendimiento mediante la percepción. Resultado de la relación entre el sujeto y el objeto. Representación del objeto en el sujeto. Conocimiento elemental. Sentencia, agudeza. Opinión.'' Pág. 372.

Aparece bien claro que sería ir contra la letra y espíritu del art. 1728 del Código Civil Revisado si tuviéramos que acudir, por tanto, a reglas abstractas para interpretar las palabras de una fianza cuando éstas deben ser expresas y nunca se presumen.

Desde luego que si asumiéramos que la fraseología de la fianza fuera ambigua o dudosa, tendríamos que seguir aquella interpretación que más limitara la responsabilidad del fiador aplicando la jurisprudencia española que hemos referido y la de esta Corte Suprema que más adelante consideramos. Sin embargo, ya que la apelante ha intentado exclusivamente apoyarse en autoridades de varios estados para sostener su contención, el principio de interpretación restrictiva en materia de fianza lo encontramos aplicado por autoridades de otros estados. En este sentido se ha llegado a decir que el garantizador (*guarantor*), igual que el fiador (*surety*), en tal respecto es el favorito de la ley y que una reclamación contra él es *strictissimo juris*.

La Corte Suprema de Oregon en el caso *Staver & Walker* v. *Looke,* Ore. 17 L.R.A. 654, en parte, dice:

"Sin embargo, se dice que está ahora bien establecido para que esté sujeto a duda, que un garantizador, así como un fiador, está obligado únicamente por el texto escrito o términos precisos del contrato de su principal cuyo cumplimiento él ha garantizado; que en este sentido él es un favorito de la ley; y que una reclamación contra él es *strictissimo juris.* Kingsbury v. Westfall, 61 N.Y. 356. Y al fijar la responsabilidad de un fiador o garantizador, debe recordarse que él es un favorito de la ley y tiene derecho a ampararse en los términos estrictos de su obligación, cuando tales términos se determinan. People v. Chalmers, 60 N.Y. 154; State v. Churchill, 48 Ark. 426."

Continuando el examen de las autoridades, toda vez que la apelante en su voluminoso alegato hace numerosas citas que tienden a definir lo que se entiende por garantías continuas y limitadas, se hace conveniente decir que ninguno de los casos citados contiene las mismas o análogas palabras del documento que es objeto de este pleito, viéndose además que no existe una regla especial mediante la cual la distinción pueda ser establecida y que poco auxilio puede conseguirse de los casos decididos, pues ellos dependen de la peculiar fraseología de cada fianza en particular. 28 C. J. 958.

Es verdad que las autoridades están en conflicto, unas interpretando el contrato en caso de duda a favor del fiador, y otras del lado del acreedor, pero aparte de que esta última regla es contraria a nuestro derecho histórico en esta materia, y a la regla de interpretación que establece el art. 1289 del Código Civil, encontramos, sin embargo, ejemplos de garantías las que más precisas en sus términos que la fianza de este caso, se han clasificado de garantías limitadas no sólo en cuanto a la suma especificada en la fianza, sino también refiriéndose a la extensión del crédito.

En el caso de *Hunter Stewart* v. *Levis Bros.,* 42 La. Ann. 22, las palabras de la fianza son como sigue:

"Queda estipulado  *  *  *  que dicho pagaré hipotecario quedará en nuestro poder como garantía colateral por la mitad de la suma en exceso de $10,000 de los anticipos que habremos de hacer nosotros a la  *  *  *  Hacienda Foley, para los gastos corrientes de la misma durante  *  *  *  1888, siempre que dicho exceso no pase de $3,000.''

No obstante, se declaró en este caso que la fianza era limitada.

En el caso de *Staver & Walker* v. *Locke, supra,* la cláusula final del contrato dice:

"Garantía.—Por valor recibido y por la ulterior consideración de un dólar pagado a él por dichos Staver & Walker, el 'infrascrito por la presente garantiza el fiel y complete cumplimiento del agente arriba nombrado, de todos los convenios y compromisos allí contraídos por dicho agente.'' 17 L.R.A. 653.

A pesar de los términos indefinidos de dicha cláusula, se interpretó restrictivamente y se decidió que la garantía era limitada.

Y sin que sea necesario seguir citando casos, basta hacer referencia por último al sumario del caso de *Ben Gerson* v. *Hamilton,* 30 La. Ann. 737, que dice lo siguiente:

"Cuando el texto de una garantía dirigida a un factor es 'quiero ser su garantía por la suma de dos mil quinientos dólares.' No es lo que se denomina una garantía continua. Sólo comprende los primeros $2,500 de dinero adelantado o efectos suministrados a la persona en favor de quien se da la garantía. El factor así garantizado está legalmente obligado a aplicar a la deuda garantizada, y para relevar al garantizador, los primeros pagos recibidos por él de la persona a favor de quien la garantía se dió.''

Por otra parte, ninguno de los varios casos citados por la apelante en su último alegato, por la fraseología de los contratos de fianza que ellos comprenden, vemos que pudieran tener aplicación al presente, en caso que fuera pertinente su estudio y consideración. Basta examinar someramente los primeros casos citados en el alegato. El caso de *Sinnige* v. *Oswald,* 170 Cal 56, se refiere a una fianza hasta la

suma de $1,000 para garantizar alquileres durante un período de 10 años.

El de *Lean* v. *Geagen,* 128 Pac. 792, la garantía no tenía tiempo limitado y no debía exceder de la suma de $1,000 para garantizar la venta y entrega de mercancías que de tiempo en tiempo comprara el deudor y se extendía a todas las deudas que por tales compras podía contraer el deudor principal. Este tomó efectos por valor de $1,102.69 y pagó a cuenta $94.69, dejando un balance en descubierto por $1,007.70. No se discutió en este caso el carácter de continua de la fianza; la sola contención del fiador fué que el deudor tomó mercancías en exceso de los $1,000 en contravención al contrato. Resulta bien clara la entera diferencia de este caso, y si bien la apelante en el presente caso alega para demostrar la conducta prudente del acreedor de no haber excedido su crédito en ningún saldo parcial, puede verse, sin embargo, de un ligero examen de la cuenta que si de ella se hace un balance el 31 de octubre de 1921, el saldo hubiera excedido en más de $900 de la garantía, ocurriendo lo mismo al final del balance, aunque ligeramente. No fué, por supuesto, ésta la contención en este pleito, pero no siempre es precavido un acreedor que deja en mucho exceder su crédito cuando la garantía es expresa y limitada.

Los casos de *Fisck et al.* v. *Stonce,* 6 Dak. 35, 50 N.W. 125, y *Pratt* v. *Mathews,* 24 Hun (N.Y.) 386, presentan igual cuestión que el anterior.

La apelante cita además la definición que de garantías continuas dá el Código Civil de California, y sin duda es una clara concepción de tales fianzas, pero la jurisprudencia de California en materia civil substantiva en nada nos obliga, ya que tenemos nuestro propio código y la jurisprudencia aplicable. No obstante, ya que las disposiciones del Código Civil Revisado deben prevalecer en materia de fianza y por ellas se prescribe que la fianza no se presume y debe ser expresa y no puede extenderse a más de lo contenido en ella, y con el fin de que aparezca clara la intención de las

partes, parece conveniente llamar la atención al modelo de
fianza que contiene el caso de *London and S. F. Bank* v.
*Parrott,* 125 Cal. 479, de donde resulta en forma expresa
que la limitación de la cantidad de que responde el fiador
no es una restricción a los avances que puedan ser hechos
al deudor principal o a la extensión de su crédito más allá
de aquel límite, respondiendo el fiador en todo caso de cual-
quier saldo dentro del límite de la fianza.

El documento a que nos referimos, textualmente dice:

"Al Banco de Londres y San Francisco, Lt'd., San Francisco,
California: Sírvanse dar crédito a la Capitol Packing Company
por una suma de dinero en moneda de los Estados Unidos que no
exceda del importe de cien mil ($100,000) dólares; y como dicha
compañía empacadora tiene en perspectiva hacer futuras negociacio-
nes con ustedes, se servirán ustedes continuar el referido crédito,
o si fuere rebajado o satisfecho por pagos hechos por dicha compa-
ñía empacadora, renovar el mismo de tiempo en tiempo por dicho
importe, o por cualquier suma menor, o de otro modo mantener di-
cho crédito permanente hasta el límite indicado, o por cualquier
cantidad menor.

"Y este documento será considerado como, y constituirá para us-
tedes, una garantía constante por cada uno de nosotros en las varias
proporciones que abajo se indican, en relación con, y comprensivas,
del crédito original aquí autorizado y de todas las futuras respon-
sabilidades de dicha compañía empacadora para con ustedes bajo
dicho crédito original, y de acuerdo con las sucesivas transacciones
que tengan con ustedes que pueda ya continuar su responsabilidad
o de tiempo en tiempo renovarla; y tal garantía durará y será efec-
tiva hasta todo el presente o futuro crédito o créditos que a ustedes
se le den como queda dicho, que no exceda del límite del importe in-
dicado, será enteramente satisfecho, con sujeción a nuestro derecho
legal de revocar la misma por escrito en cualquier momento con res-
pecto a cualesquiera transacciones que tengan lugar después de tal
revocación."

    *     *     *     *     *     *     *

No hubiéramos tenido que ir tan lejos en el estudio y con-
sideración de este asunto si no hubiera sido por la extrema
importancia que el nuevo abogado de la apelante atribuye
a este caso para el comercio en general, el que lo tiene sin

duda, porque sencillamente se pudo decir que los principios que seguimos en nuestra opinión de julio 12, 1924, y que sostenemos con motivo de la moción de reconsideración, fueron establecidos por esta Corte Suprema en el caso de *Sucesión Valdés v. Acevedo,* 23 D.P.R. 736. Este caso que interpreta el art. 1728 del Código Civil, *supra,* y declara "que los contratos de fianza, por su naturaleza, dado que se adquieren obligaciones generalmente sin remuneración, son de interpretación estricta," encierra en esta sentencia todo el espíritu de la jurisprudencia, tanto española como americana, que consideran al fiador el favorito de la ley y las reclamaciones en su contra de *strictissimo juris.* Aún de este caso tal vez podíamos decir que su interpretación ha sido más estricta, más fuerte, si siguiéramos al apelante en su argumentación partiendo de presunciones para la interpretación de los contratos de fianza. Y naturalmente que si se hubiera interpretado el contrato dentro de los principios de algunos casos americanos citados por la apelante, éste no hubiera podido, como intenta hacer, distinguirlo de dichos casos en su esencia, y mediante una interpretación liberal de presunciones pudo llegarse a que se calificara de continua la fianza, pues si bien la garantía quedó limitada expresamente a la cantidad de $800, no así apareció tan claramente para esta corte la extensión del crédito durante el período del contrato, no obstante la cláusula general de la fianza diciendo el fiador "quedando y dejando vigente esta garantía mientras lo esté el ameritado contrato o adeude el Sr. Ufret a la central cantidad alguna por virtud del mismo." El contrato era por dos años y pudo tal vez interpretarse dicha cláusula general refiriéndose a cualquier saldo que no excedería del límite de la suma especificada en la fianza, puesto que el contrato principal, como de refacción de cañas, originaba necesariamente una cuenta corriente por los avances y entregas. A pesar de esto se declaró llanamente que dicha cláusula general no autorizaba al acreedor para hacer avances en exceso de los $800 que montaba la garantía y

que los abonos hechos por el deudor con las entregas del primer año, cubriendo en exceso la fianza, exoneró al fiador de su obligación subsidiaria. Y esto mismo fué lo que se declaró en el presente caso con vista de términos más precisos y expresos.

A propósito de estas conclusiones parece oportuno decir que el caso de *Stewart* v. *Levis Bros., supra,* es substancialmente análogo a nuestros casos. El fiador es el que promueve la acción contra el acreedor para recobrar de él la cantidad que éste cobró ejecutando judicialmente un pagaré hipotecario que recibió como garantía colateral de los avances que se concedieron al deudor principal. La Corte Suprema de Louisiana, en su opinión sosteniendo al fiador, dice de un modo semejante a lo sostenido en nuestro caso:

"Desde el momento en que los $13,000 del primer anticipo hecho por los demandados a los dueños de la hacienda fueron reembolsados, el contrato entre ellos y el demandante dejó de tener efecto, pues no era un contrato continuado sino simplemente un convenio auxiliar. El riesgo había de correrse una sola vez. Se corrió impunemente una vez y lo convenido quedó como si jamás lo hubiera sido. Las obligaciones de un fiador son *stricti juris* y no pueden extenderse más allá de la intención y voluntad de las partes contratantes." *Stewart* v. *Lewis Bros.,* 42 La. Ann. 22.

Y más adelante se declara en dicha opinión que si el acreedor hubiera sido el que hubiese establecido la acción contra los fiadores que aparecen siendo los dueños de una plantación (Foley Plantation) que recibió los avances, el resultado hubiera sido el mismo y a este efecto se dice por dicha corte:

"Es evidente que si se hubiera entablado pleito por los demandados bajo los hechos revelados por los autos, contra los dueños de la hacienda por $3,000 anticipádosles, después que se les habían ya anticipado los $10,000, los dueños, mediante alegación de pago, hubieran sido exonerados, pues tomando como cierto que existe un balance deudor de $1,088 a favor de los demandados, no es un balance deudor sobre los $3,000 anticipados bajo el convenio inmediatamente después que fueron anticipados los $10,000, haciendo una suma total

de $13,000; sino un balance deudor sobre los $12,904 que fueron anticipados después que los $13,000 habían sido desembolsados. Claramente, la obligación es una de pagar en caso de que el deudor deje de hacerlo (R.C.C. 3045), y como los dueños de la hacienda han pagado los $3,000 prestádosles en exceso de los $10,000, la conclusión es que no procede reclamación en forma alguna por parte de las personas a cuyo favor se expidió el pagaré y contra el fiador por dichos $3,000 o cualquier parte de los mismos." *Id.* p. 23.

No parece necesario añadir que este caso de Louisiana es de innegable importancia toda vez que rige en dicho estado un Código Civil en que muchas de sus disposiciones son semejantes a las del Código Civil Revisado, pues provienen de una misma fuente.

*Por todo lo expuesto, la moción de reconsideración debe declararse sin lugar.*

El Juez Asociado Sr. Wolf disintió.