Drug Company of Porto Rico, Inc., demandante y apelada, *v.* Julio Pérez Avilés y Francisco María Susoni, demandados y apelante el último. La Misma, demandante y apelante *v.* Los Mismos, demandados y apelado el último.

Nos. 5737 y 5724.—*Sometidos:* Junio 3, 1932. *Resueltos:* Julio 11, 1932.

*Lens & Susoni,* abogados del demandado-apelante; *Pellón & Ayuso,* abogados de la demandante-apelada.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Es ésta una acción en cobro de dinero interpuesta por Drug Company of Porto Rico, Inc., contra Julio Pérez Avilés y Dr. Francisco María Susoni, en la cual se alega substancialmente que los demandados formalizaron un contrato con la demandante el día 2 de marzo de 1927 en virtud del cual la demandante abrió un crédito al demandado Pérez Avilés hasta la cantidad de $2,000 para ser pagadas las facturas contra giros aceptados por éste, a un plazo de cinco meses, y el otro demandado, Dr. Francisco María Susoni, garantizó al

primero, solidariamente, hasta la cantidad de $1,000; que como resultado de dicho contrato Pérez Avilés tomó a crédito a la demandante drogas y patentizados por la cantidad de $1,511.56, habiendo el demandado Pérez Avilés aceptado los siguientes giros: Número 6163, de 29 de febrero de 1928 por $652.40 a pagar el 31 de julio de 1928; número 7823 de 7 de julio de 1928, por $584.50 a pagar el 30 de noviembre de 1928; número 7994 de 9 de agosto de 1928, por $258.41, a pagar el 15 de marzo de 1929; el número 8593 de 3 de octubre de 1928, por $265.89 a pagar el día 28 de febrero de 1929, adeudándose de este último solamente $13.28.

Alega además la demandante que los demandados fueron requeridos de pago y que hasta la fecha no ha sido satisfecha la cantidad que se reclama en la demanda.

Previa anotación de rebeldía contra el demandado Julio Pérez Avilés por haber dejado de contestar la demanda, se dictó sentencia contra él por la suma reclamada, con sus intereses legales desde la interposición de la acción.

El demandado, Dr. Susoni, negó todos los hechos de la demanda, aceptó el otorgamiento y formalización del contrato celebrado con la demandante, y alegó que de acuerdo con el mismo la demandante abrió un crédito al otro demandado Pérez Avilés, en forma de cuenta corriente y expidiendo facturas por el montante de las mercaderías vendidas, que cargaba a la cuenta corriente del otro demandado, y periódicamente expedía giros, que comprendían distintas facturas, los cuales debían ser pagados por el otro demandado en el término de cinco meses desde la fecha de su expedición; que dicha cuenta corriente se continuó hasta el 15 de octubre de 1928, y que desde el 2 de marzo de 1927, fecha del contrato, hasta el día 15 de octubre de 1928, fecha de su terminación, la demandante entregó mercaderías a Pérez Avilés por valor de $8,274.47, habiendo recibido hasta el 15 de octubre de 1928 pagos efectuados por Pérez Avilés montantes a la suma de $4,365.27 quedando en dicha fecha adeudando Pérez Avilés a la demandante la cantidad de $3,909.20; que los pagos efec-

tuados por Pérez Avilés a la demandante, hasta el 15 de octubre de 1928, saldan en un todo la garantía prestada por el demandado Dr. Susoni, ya que la misma alcanzaba a $2,000 (sic) y los pagos se elevan a $4,365.27; que el 15 de enero de 1929 la demandante y el otro demandado Pérez Avilés dieron por terminado el contrato mencionado, sin notificación ni conocimiento del demadado Dr. Susoni, pagando Pérez Avilés a la demandante la cantidad de $2,397.64; y alegando especialmente que en el caso de que la Corte considere que los pagos que habían sido hechos con fecha anterior no saldan su garantía, los $2,397.64 exceden al importe de la misma; que la cantidad reclamada por la demandante es una ampliación del crédito hecho por la misma al demandado Pérez Avilés, por su cuenta y riesgo y sin intervención ni responsabilidad por parte del otro demandado.

La Corte de Distrito de Arecibo dictó sentencia contra el demandado Dr. Susoni, condenándole a satisfacer la cantidad de $1,000, sin especial condenación de costas, y de esta sentencia el referido demandado interpuso el presente recurso de apelación.

Ocho son los errores que el demandado apelante atribuye a la corte inferior. Examinaremos esos errores por su orden dentro del curso regular de la argumentación.

■ ■ ■ Los errores primero y segundo se basan en que la corte se negó a conceder las mociones presentadas por el apelante en 22 de septiembre de 1930 y 6 de noviembre del mismo año, solicitando una cuenta corriente y detallada de las distintas partidas tomadas por el demandado Julio Pérez Avilés a la demandante. La corte inferior basó su resolución negándose a conceder la moción en que el demandado Dr. Susoni tenía un recurso a su alcance para obtener la misma finalidad mediante un "bill" de particulares (*bill of particulars*). La parte demandante alega, por conducto de su abogado, que la cantidad reclamada en la demanda está representada por cuatro giros de distintas cantidades, expedidos contra el codemandado Julio Pérez Avilés, quien los aceptó

de conformidad, convirtiéndose la cuenta que antes existía entre ellos en una cuenta líquida y cerrada, por lo cual no era necesario ni pertinente que la parte demandante tuviese que suministrarle copia alguna de la cuenta al apelante, ya que la causa de acción que se ejercita es distinta por completo a la que existía antes de cerrarse y liquidarse la cuenta con la conformidad de las partes.

En el contrato se convino que la demandante abriría un crédito a Julio Pérez Avilés hasta la cantidad de $2,000 para ser pagadas las facturas contra giros debidamente aceptados por el Sr. Julio Pérez Avilés.

A pesar de que estos giros fueron aceptados, el demandado entiende que la corte ha debido resolver favorablemente su moción solicitando una cuenta corriente. Pero es el caso que el demandado apelante presentó como prueba una cuenta corriente que le fué facilitada por la demandante en 22 de julio de 1929. La demanda se radicó en 21 de marzo de 1930. En esta cuenta corriente aparecen descritas detalladamente todas las partidas tomadas por Julio Pérez Avilés a la demandante. Esta cuenta, que fué rendida a solicitud del apelante, no aparece impugnada por éste, a pesar del tiempo transcurrido.

En el caso de *Rose* v. *Bradley*, 91 Wisc. 619, 65 N. W. 509, la Corte Suprema de Wisconsin se expresó en los siguientes términos:

"El mero hecho de que una persona prepare la cuenta de un deudor suyo con quien haya tenido relaciones comerciales, y el hecho de que se la envíe, y la retención por él de la misma, sin objeción, no constituyen necesariamente una cuenta liquidada (account stated). Si la otra persona conserva la cuenta y deja de objetarla dentro de un tiempo razonable, los hechos suscitan una presunción o inferencia de asentimiento. Eso es todo. Tal presunción o inferencia es más o menos fuerte según las circunstancias. El olvidar devolverla u objetarla puede durar tanto tiempo que haga concluyente tal presunción en lo que a la cuestión de asentimiento se refiere, de suerte que la constituya en liquidada (stated). Sin embargo, la mera retención de la cuenta sin objeción sólo es evidencia de asentimiento."

En el caso de *White* v. *Hampton,* 10 Iowa 238, se dijo:

"Lo que haya de estimarse como una cuenta liquidada teniendo en cuenta la presumida aquiescencia de las partes, deducida del transcurso del tiempo y falta de objeción dentro de un período razonable, debe depender de las circunstancias que han de juzgarse por la naturaleza de la transacción, los hábitos de los negocios y curso del comercio." Véase *Hollenbeck* v. *Ristine,* 67 Am. State Rep. 306.

Cuando se ha rendido una cuenta y no ha sido impugnada después de un tiempo razonable permitido para su examen, dicha cuenta debe considerarse prima facie correcta. Esta presunción puede ser rebatida mediante prueba. *First National Bank* v. *Allen,* 100 Ala. 476, 46 Am. State Rep. 80.

En este caso la corte inferior permitió al demandado interrogar ampliamente al apoderado de la demandante, Angel M. Méndez, sobre la cuenta corriente, mientras presentaba su prueba. En ningún momento el apelante impugnó la corrección de esa cuenta. No hizo objeción a ninguna de sus partidas y al contender que no está obligado a pagar la cantidad que se le reclama en la demanda, se basa en la relación detallada que aparece en dicha cuenta de las partidas tomadas por Julio Pérez Avilés a la demandante. Habiéndose demostrado que el apelante tuvo la cuenta en su poder por un período de tiempo de ocho meses sin hacer objeción alguna a la corrección de la misma, que la presentó como prueba y se ha servido de ella para plantear las cuestiones de derecho que a su juicio le eximen de responsabilidad, entendemos que debe prevalecer la presunción de que el apelante ha aceptado que la cuenta es correcta, ya que no se ha presentado prueba alguna para rebatir esta presunción. Y siendo ello así, teniendo el apelante en su poder la información que solicitaba, no debe considerarse perjudicado porque la corte declarara sin lugar su moción y porque la demandante se negara a reproducir la cuenta que ocho meses antes le había facilitado.

██ ██ Pasemos ahora a considerar los errores tercero y cuarto que a continuación copiamos:

"3º. Cometió abierto error la corte inferior al considerar que después de satisfecha la cantidad de $4,365.27 por Pérez Avilés, hasta el día 15 de octubre de 1928, el fiador Francisco M. Susoni, o sea el demandado apelante, era un responsable de acuerdo con los términos del contrato de la fianza, a pesar de ser la misma limitada hasta mil dólares en un crédito no mayor de dos mil dólares.

"4º. La corte inferior erró también al no considerar que el pago efectuado por Pérez Avilés el día 15 de enero de 1929, fecha en que se dió por terminado el contrato, ascendente a la cantidad de $2397.64 no saldaba en un todo la garantía prestada de acuerdo con el repetido contrato."

Estos errores plantean la cuestión fundamental a resolver para determinar si el demandado es o no responsable al pago de la suma reclamada por la demandante. La corte inferior declaró probadas todas y cada una de las alegaciones de la demanda y escribió una cuidadosa opinión examinando el contexto de la fianza otorgada por el demandado y emitiendo su criterio sobre los efectos de la misma. El contrato celebrado entre la demandante, Julio Pérez Avilés y el demandado dice así:

"Arecibo, P. R., marzo 2, 1927. CONTRATO ENTRE EL SR. JULIO PÉREZ AVILÉS, FARMACÉUTICO DE LA CIUDAD DE ARECIBO; DRUG COMPANY OF PORTO RICO INC., corporación organizada bajo las leyes del estado de New York, y DON FRANCISCO MARÍA SUSONI.

"Es convenido que la Drug Co. of Porto Rico Inc. abra un crédito a Don JULIO PÉREZ AVILÉS hasta la cantidad de $2,000.00 para ser pagadas las facturas contra giros debidamente aceptados por el Sr. JULIO PÉREZ AVILÉS a un plazo de cinco meses fecha de factura.

"Es convenido que este crédito se mantendrá en vigor por el término de tres años siempre y cuando que todas las condiciones estipuladas en este contrato sean cumplidas por el Sr. JULIO PÉREZ AVILÉS.

"En consideración a lo antes expuesto y a la consideración hecha de la extensión de dicho crédito por la DRUG COMPANY OF PORTO RICO INC., el Dr. FRANCISCO MARÍA SUSONI garantiza hasta la cantidad de mil dólares ($1,000.00). Los otros mil dólares ($1,000.00) serán dados por la DRUG CO. OF PORTO RICO INC. sin otra garantía que la del Sr. JULIO PÉREZ AVILÉS para mercaderías del ramo de farmacia que sean pedidas por el Sr. JULIO PÉREZ AVILÉS, por la cual se

constituye fiador y garantizador hasta la cantidad de mil dólares ($1,000.00) el Dr. Francisco María Susoni para con la DRUG COMPANY OF PORTO RICO INC., los sucesores o cesionarios de cualquier cantidad que en cualquier momento adeude el expresado Sr. JULIO PÉREZ AVILÉS a la DRUG COMPANY OF PORTO RICO INC., hasta la cantidad de mil dólares ($1,000), dejando en pie esta fianza y garantía hasta tanto avise por escrito de su cancelación entendiéndose que el DR. FRANCISCO MARÍA SUSONI hace expresa renuncia de la excusión de bienes, de derechos de notificación de cualquier prórroga que conceda la DRUG COMPANY OF PORTO RICO INC. al Sr. JULIO PÉREZ AVILÉS para el pago de cualquier suma que les adeude en cualquier momento hasta la cantidad de mil dólares ($1,000) y que esta fianza hasta la cantidad de mil dólares ($1,000) se constituye con el carácter de solidaria con el Sr. JULIO PÉREZ AVILÉS la DRUG COMPANY OF PORTO RICO INC. por conducto de su apoderado SR. ARTURO MÉNDEZ y se compromete a mantener este crédito por tres años en vigor, siempre y cuando que los giros que se extiendan a cargo del SR. JULIO PÉREZ AVILÉS sean pagados al vencimiento de cada uno o sea al plazo de cinco meses. A mantener este crédito hasta la cantidad de $2,000, dos mil dólares, $1,000 como se ha expresado anteriormente con la garantía mencionada del SR. FRANCISCO MARÍA SUSONI y mil dólares ($1,000.00) con la firma del Sr. JULIO PÉREZ AVILÉS. Fdo. Drug Co. of Porto Rico. Por:—A. Méndez. Fdo. Julio Pérez Avilés. Fdo. Dr. F. M. Susoni.''

En síntesis el Dr. Susoni alega que su garantía fué otorgada hasta la suma de $1,000, por el término de tres años, y que toda vez que la demandante concedió al otro demandado crédito que rebasó su garantía, los pagos verificados por Pérez Avilés lo relevaron a él de la obligación que había contraído, por cuanto los referidos pagos ascendieron en 15 de octubre de 1928 a $4,365.27, habiendo además Pérez Avilés pagado a la demandante $2,397.64 en 15 de enero de 1929.

De acuerdo con los términos del contrato la obligación contraída por el demandado se limita, en cuanto a la cantidad, hasta la suma de $1,000, y en cuanto al tiempo, al término de tres años. Las facturas deben ser pagadas por medio de giros debidamente aceptados por el Sr. Pérez Avilés. Se constituye la fianza con carácter de solidaria y el Sr. Susoni se convierte en fiador y garantizador hasta la suma de $1,000

de cualquier cantidad que en cualquier momento adeude Pérez Avilés a la demandante.

El demandado apelante se acoge a la doctrina sentada en el caso de *Brunet* v. *Aponte,* 33 D.P.R. 524, para argüir que no está, obligado a pagar la suma que se le reclama. El alcance de la doctrina establecida en este caso ha sido debidamente explicado en el caso de *Gamarra* v. *Navarro,* 40 D.P.R. 745, y en el caso de la *West India Oil Co.* v. *Ramírez Hostos.* recientemente resuelto por este tribunal (ante pág. 646). Ya en el mismo caso de *Brunet* v. *Aponte, supra,* dijo esta corte que no existe una regla especial mediante la cual la distinción entre garantías continuas y limitadas puede ser establecida y que poco auxilio puede conseguirse de los casos decididos, pues ellos dependen de la peculiar fraseología de cada fianza en particular. Y la peculiar fraseología de la fianza otorgada por Susoni demuestra que se obligó a pagar solidariamente, hasta la suma de $1,000, por el término de tres años, de cualquier cantidad que en cualquier momento adeude Pérez Avilés a la demandante. En el caso de la *West India Oil Co.* v. *Ramírez Hostos, supra,* dijo la corte por conducto del Juez Aldrey:

"Los hechos en el presente caso son iguales a los del de Sucrs. de Gamarra, *supra,* pues en ambos la fianza no tiene tiempo determinado, se fijó una cantidad como límite de responsabilidad, se hicieron pagos por el deudor principal en exceso del límite de la cantidad fijada y en ambos se constituyeron los fiadores en principales pagadores.

"Los casos citados por la corte inferior se distinguen del que resolvemos y del de Gamarra en que en aquéllos los garantizadores se constituyeron en simples fiadores y en los otros dos la obligación fué suscrita como fiadores y principales pagadores de su fiado."

En el presente caso las ventas hechas por la demandante a Pérez Avilés se llevaron a cabo dentro del término de tres años fijados en el contrato. Ahora bien, de acuerdo con los términos del contrato y el carácter solidario de la fianza, ¿cuál es la posición que ocupa el fiador demandado con respecto a su acreedora la demandante? Comentando el artículo

1831 del Código Civil Español, equivalente al 1730 de nuestro Código Civil, edición de 1930, que trata de los casos en que no tendrá lugar la excusión de bienes, dice Manresa:

"El segundo de los casos consignados en el artículo, es el de haberse obligado solidariamente el fiador con el deudor, y tampoco puede ofrecer duda ninguna su procedencia y justificación, porque entonces, por virtud de los mismos términos en que se contrae la obligación de fianza, cambia el carácter de la misma, toda vez que de subsidiaria pasa a ser solidaria, convirtiéndose con ello el fiador en un verdadero codeudor principal, lo mismo que el fiado. Dicha excepción se halla reconocida también en el párrafo 2°. del art. 1822, en el que se establece, como se recordará, que en dicho caso, en vez de seguirse las reglas y prescripciones propias del contrato de fianza, se observará lo dispuesto en la sección 4ª., capítulo 3°., tít. 1°. de este libro, respecto de las obligaciones solidarias. Por lo tanto, dejando de ser fiador por convertirse en deudor principal, no puede invocar el beneficio de orden que ha renunciado al obligarse *in solidum* con el fiado." Comentarios al Código Civil, tomo 12, pág. 258.

En el caso de Gamarra v. Navarro, *supra,* se cita, explicando su alcance, la sentencia dictada por el Tribunal Supremo de España en 29 de diciembre de 1898, en la cual se dice que "por consistir la fianza en la obligación de cumplir los compromisos contraídos por un tercero para el caso de no hacerlo éste, cabe que el fiador se obligue solidariamente con el deudor principal *sin perder por ello el contrato su naturaleza propia.*"

Manresa parece explicar el sentido de esta sentencia cuando dice, comentándola, que si de los términos del contrato o de la expresión de la voluntad del tercero resulta que la intención no fué convertirse en un mero deudor principal, sino constituirse tan sólo en fiador, aunque obligándose solidariamente, podrá intentarse contra él la reclamación por efecto de dicha solidaridad sin hacer antes excusión de bienes del fiado; pero hecho el pago, tendrá todos los derechos inherentes al fiador, y no estará sujeto a las limitaciones propias del codeudor solidario.

La responsabilidad del fiador solidario para con el acree-

dor es igual a la del deudor; pero el contrato de fianza conserva su naturaleza propia en lo que respecta a las relaciones entre fiador y deudor. El fiador conserva sus derechos por razón de la fianza, mientras que el codeudor no tiene otros derechos que aquellos que se le reconocen en la sección 4ª. del capítulo 3º., tít. 1º. del libro 4º. del Código Civil. En sus relaciones con el acreedor el fiador solidario es un principal pagador que no puede alegar el beneficio de división y excusión y que tiene la obligación de cumplir el contrato íntegra y totalmente, desde el momento en que el fiado deja de cumplir lo convenido.

Es verdad que de acuerdo con la cuenta corriente facilitada por la demandante al demandado Dr. Susoni hubo momentos en que las mercaderías vendidas a Pérez Avilés rebasaron con exceso la cantidad de $2,000, y que de acuerdo con el contrato la demandante se obligó a abrir un crédito de $2,000 al codemandado Pérez Avilés, pero no es menos cierto que el demandado apelante se obligó a pagar hasta la suma de $1,000 de cualquier cantidad que en cualquier momento adeudase Pérez Avilés a la demandante. En vista de los términos del contrato y del carácter solidario de la fianza, entendemos que el Dr. Susoni está obligado a satisfacer a la demandante la cantidad que se le reclama en la demanda.

El quinto error se basa en que la corte no permitió al demandado apelante declarar sobre la transacción que representaban los giros ofrecidos como prueba y por qué y por cuál institución bancaria se presentaron al cobro. Cuando declaraba el testigo Angel M. Méndez y se identificaban estos giros para ofrecerlos como prueba, y antes de ser aceptados, el abogado del apelante preguntó al pago de qué mercancías se referían dichos giros. La demandante se opuso a la pregunta. La corte sostuvo la objeción basada en que en el período de identificación de la prueba, el demandado podía repreguntar sobre este extremo, pero no sobre la transacción, reservando al demandado el derecho de hacerlo en la repregunta. El apelante tomó excepción, y luego, en la repregunta, interrogó al

testigo con toda amplitud sobre la transacción y sobre el mismo extremo que motivó ante su objeción. Se desestima este supuesto error.

Los errores sexto y séptimo se basan en que la corte admitió en evidencia la sentencia en rebeldía dictada contra el codemandado Pérez Avilés y la notificación de esta sentencia al interesado. Se declaran sin lugar estos supuestos errores.

Y el último error se basa en que la corte admitió como prueba cuatro giros, tres de los cuales aparecen aceptados por Julio Pérez Avilés y otro por J. Pérez Avilés, sin constar en ninguno de ellos la fecha de la aceptación. También se desestima este alegado error.

La demandante, en un recurso interpuesto separadamente, pero que forma parte de este pleito, apeló de la parte de la sentencia que se refiere a las costas e intereses desde la interposición de la demanda, alegando que la corte erró porque no condenó al demandado al pago de las costas y de los intereses legales desde el momento en que se inició esta acción. Nosotros creemos que la corte inferior, al dictar su sentencia sin especial condenación de costas, tuvo en cuenta las cuestiones de derecho envueltas en este litigio y la confusión que ha podido crearse con respecto a la interpretación de un contrato de fianza, atribuyendo a la fianza solidaria limitaciones propias únicamente de la fianza simple. Opinamos que la corte inferior apreció esta circunstancia para no juzgar al demandado litigante temerario, y no nos sentimos justificados para revocar su decisión.

En cuanto a los intereses legales entendemos que ha debido condenarse al demandado al pago de los mismos desde la fecha de la interposición de la demanda.

*Debe confirmarse la sentencia apelada, con la única modificación de condenar al demandado al pago de los intereses legales desde la interposición de la demanda.*

El Juez Asociado Señor Wolf está conforme con la sentencia y la opinión salvo la parte de ésta que se refiere al caso de *West India Oil Co.* v. *Ramírez et al.*, por los motivos que expresara en su voto concurrente en dicho caso.