Roig Commercial Bank, demandante y apelante, *v.* Manuel Portela Cabezudo, Gustavo Quiñones y Ramón Quiñones, demandados y apelados.

Núm. 7326.—*Sometido:* Noviembre 30, 1937. *Resuelto:* Febrero 7, 1938.

*González Fagundo & González, Jr.,* abogados del apelante; *C. Iriarte, F. Fernández Cuyar, Héctor González Blanes* y *Luis Lloréns Torres,* abogados de los apelados.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

A una demanda sobre rescisión de enajenaciones fraudulentas radicada contra ellos por el Roig Commercial Bank ante la Corte de Distrito de Humacao, Manuel Portela Cabezudo, Gustavo Quiñones y Ramón Quiñones interpusieron con éxito una excepción previa de falta de causa de acción y de prescripción. A instancias del demandante, la corte dictó sentencia declarando sin lugar la demanda.

Como antecedentes, el banco demandante alegó en la demanda que pagarés, que por las sumas de cuatrocientos y dos mil dólares habían sido otorgados por el demandado Portela y otro allá para 1929, habían vencido el 9 de enero de 1930 y no fueron pagados a su vencimiento; que el banco entabló demanda para recobrar estas cantidades, pero que no prosiguió el recurso debido a que en pago de los mismos el banco aceptó otro pagaré de las mismas partes fechado septiembre 15, 1931, por $2,400.09, a noventa días, pagaré que tampoco fué satisfecho a su vencimiento; que entonces el banco demandó a Portela, y el 3 de abril de 1933 obtuvo sentencia por dicha suma, con intereses al 12 por ciento a partir del 14 de diciembre de 1931.

La demanda continúa alegando que de conformidad con la referida sentencia el banco trató de embargar ciertos bienes que se suponían pertenecer a Portela, pero que se denegó la anotación de estos embargos debido a que dichos bienes, en julio y mayo de 1930, habían sido traspasados a Ramón Quiñones y Gustavo Quiñones, respectivamente. En los tres últimos párrafos de esta demanda se alega que estos traspasos fueron simulados, toda vez que el demandado continuó en po-

sesión y las personas a quienes se hicieron los traspasos eran insolventes al tiempo de las enajenaciones; que éstas fueron hechas con el fin de defraudar al acreedor, y que el demandado no tenía otros bienes contra los cuales pudiera ejecutarse la sentencia. En resumen, el Roig Commercial Bank solicita que se dejen sin efecto las enajenaciones por ser simuladas y, por ende, nulas y sin ningún valor ni efecto.

Al declarar con lugar las excepciones por ambos fundamentos, la corte de distrito, con fecha 23 de octubre de 1935, dijo, entre otras cosas, lo siguiente:

"La propia entidad demandante dice, en el hecho cuarto de su demanda, que las obligaciones que vencieron en el 1930 fueron pagadas, estableciéndose al efecto en septiembre de 1931, una nueva obligación para vencer a 90 días plazo. En esas condiciones, y habiendo estado necesariamente fuera de toda consideración por la entidad demandante, al establecerse la nueva obligación de 1931, el dominio, por el demandado Portela, de ambas o de cualquiera de las dos fincas descritas en la demanda, las cuales según sus propias alegaciones habían sido vendidas con anterioridad a dicha fecha, se impone la conclusión de que, cuando las mismas fueron enajenadas, no se realizó con ello fraude alguno contra el demandante, pues a la fecha de las referidas enajenaciones no se había establecido todavía la obligación que fué objeto de la acción entablada ante esta corte en 2 de julio de 1932. . . ."

En síntesis, lo que la corte dice es que los traspasos se hicieron antes de haber surgido la nueva obligación de Portela y que en su consecuencia no pudo haber fraude. La corte continúa diciendo que la demanda deja de aducir que el demandante no tuviera otro modo de obtener el pago de su deuda, alegación necesaria, según ella, "para que pueda prosperar una acción de esta clase, a juzgar por el texto del artículo 1243 del Código Civil vigente (edición de 1930), así como por el artículo 1246 del mismo código, y las decisiones del Tribunal Supremo de Puerto Rico en los casos de *Martínez* v. *Sucesores de Cosío y Primo,* 38 D.P.R. 240; *Congress Cigar Co., Inc.,* v. *Gráu,* 44 D.P.R. 649 y *González* v. *López Quiñones,* 46 D.P.R. 843."

Los artículos 1243 y 1246 del Código Civil proveen:

"Artículos 1243.—Son rescindibles:

". . . . . . . .

"3.—Los celebrados en fraude de acreedores, cuando éstos no puedan de otro modo cobrar lo que se les deba.

"Artículo 1246.—La acción de rescisión es subsidiaria; no podrá ejercitarse sino cuando el perjudicado carezca de todo otro recurso legal para obtener la reparación del perjuicio."

La obligación original de Portela en favor del banco surgió en 1929. Convenimos con el apelante en que cuando en la demanda se alegó que la obligación había sido pagada, meramente quiso decir que el pagaré posterior había sido aceptado en sustitución de los anteriores. Desde 1929 existía una verdadera deuda, que nunca fué pagada. Los pagarés dados primeramente evidenciaban la obligación, y el otorgado más tarde no podía considerarse como un pago, sino meramente como una continuación de la deuda. De igual modo, cuando el segundo pagaré no fué pagado, el demandante estaba en libertad de demandar nuevamente sobre la deuda u obligación originales, o sobre el pagaré dado en su sustitución.

█ Igualmente somos del criterio de que estas enajenaciones, hechas con tanta proximidad a la supuesta obligación nueva, fueron celebradas en fraude de acreedores, aun en lo que respecta al nuevo pagaré, toda vez que Portela al tiempo de efectuar las enajenaciones adeudaba dinero al banco. El objeto (*subject*) del pagaré podía retrotraerse a esa fecha.

██ Convenimos, desde luego, en que si se hacen enajenaciones *bona fide* en época en que una persona es absolutamente solvente, su insolvencia posterior de ordinario no podría hacer que sus enajenaciones anteriores puedan ser atacadas como fraudulentas. Un pleito para que se deje sin efecto una enajenación por fraudulenta claramente o de ordinario no cae dentro de los artículos 1243 y 1246, supra. Tampoco hallamos que los casos citados tengan peso alguno en la resolución del recurso que tenemos a la vista. Conforme leemos la opinión de la corte inferior, vemos que ella no descansó en uno de los

fundamentos que ahora aducen los apelados, o sea, que la demanda no alegó que Portela fuera insolvente al tiempo de efectuarse los traspasos. Bajo estas circunstancias, y de resolver este Tribunal que la acción no ha prescrito, creemos que al demandante debe dársele la oportunidad de enmendar su demanda, si puede, para que incluya esa alegación.

■■ Según hemos dicho, la corte inferior también sostuvo la excepción previa basada en prescripción. La corte de distrito se basa exclusivamente en el artículo 1251 del Código Civil (edición de 1930), que lee así:

"La acción para pedir la rescisión dura cuatro años.

"Para las personas sujetas a tutela y para las ausentes, los cuatro años no empezarán hasta que haya cesado la incapacidad de los primeros, o sea conocido el domicilio de los segundos."

Hemos considerado la demanda y aunque nominalmente se titula como de "rescisión" de contrato, llegamos a la conclusión de que debe ser considerada como una que primordialmente trata de dejar sin efecto o deshacer una transacción celebrada ficticiamente por el deudor del demandante y otros, con la intención fraudulenta de impedir que el demandante recobre lo que se le debe. La corte inferior, no sin justificación alguna, aplicaba lo que ella consideró ser el único estatuto bajo el cual podía instruirse el pleito, mas creemos que su decisión a este respecto debe ser revocada. Las cortes existen primordialmente con el fin de hallar un remedio para un daño legal. Esto es especialmente cierto en casos de fraude, cuando las simpatías del juzgador deben estar con la persona defraudada, de suerte que no debe privársele de su derecho por algún motivo realmente técnico, como por ejemplo, el intitular su demanda indebidamente, cuando aparece que ella aduce suficientes hechos de los cuales se puede establecer una causa de acción definitiva a su favor.

En este caso el demandante alegó que las ventas efectuadas por el deudor a Gustavo y Ramón Quiñones fueron simuladas y ficticias y que éstos eran insolventes para aquella época.

Igualmente alegó que el demandando continuó en posesión de las fincas. La súplica de la demanda lee así:

"Por lo que suplica de la corte se sirva dictar sentencia declarando nulas y sin ningún valor ni efecto por ser simuladas, la venta de la finca urbana a favor de Ramón Quiñones Rieder y la venta de la finca rústica a favor de Gustavo Quiñones Rieder, condenando a los demandados al pago de las costas."

Por tanto, en nuestra opinión, la demanda contenía hechos suficientes para determinar que el demandante trataba de dejar sin efecto o que se declarara inexistente una transacción simulada. La situación no cae claramente ni bajo los artículos 1243, et seq., que tratan de rescisión, ni bajo el artículo 1253 del Código Civil, que se refiere a las acciones de nulidad.

Hemos hallado sostén para el concepto que del caso hemos formado en los comentaristas al Código Civil español y en la jurisprudencia escrita a la luz de la Ley Civil de Louisiana.

Martínez Ruiz, en sus Comentarios al Código Civil español, según éste es interpretado por el Tribunal Supremo de España (edición de 1907), da énfasis al hecho de que cuando para defraudar a los acreedores se simula una venta, el remedio adecuado no es una acción rescisoria, sino una de nulidad, toda vez que las partes jamás han celebrado un contrato válido. (Véase el tomo 8, opus cit. a la página 604.)

Al discutir la acción de nulidad, el comentarista llegó a la conclusión de que cuando el contrato en realidad es inexistente, el período prescriptivo nunca transcurre, a exclusión del término necesario para adquirir los derechos de propiedad. (Véase el tomo 8, supra, páginas 670, 671.)

De igual modo, Manresa, en el tomo 8 de sus Comentarios al Código Civil (cuarta edición, 1929) a la página 697, discute la distinción existente entre contratos nulos e inexistentes. Incluye los contratos "simulados" entre los que deben considerarse como inexistentes y para cuya nulidad o declaración judicial de inexistencia no transcurre el período prescriptivo.

En el caso de *Hibernia Bank and Trust Co.* v. *Louisiana Avenue Realty Co.*, 143 La. 962, 79 So. 554, 556, la Corte Suprema de Louisiana dijo:

"Si consideramos ahora las excepciones en tanto en cuanto afectan la segunda causa de acción del demandante, o sea que las supuestas ventas y transferencias son meras falsedades y simulaciones, es evidente que dichas excepciones son insostenibles bajo nuestro derecho. Un contrato simulado es uno que, aunque concreto en su forma, no tiene en realidad existencia y es tan sólo un mito. Puede en cualquier momento, y a instancias de una parte interesada, ser declarado falso, y puede ser aun pasado por alto por los acreedores del presunto vendedor."

En el caso de Louisiana, del cual hemos citado más arriba, hubo una excepción previa de prescripción bajo el estatuto. Conforme puede inferirse, la corte la declaró sin lugar, ya que resolvió que un contrato simulado podía ser declarado nulo en cualquier momento y a instancias de cualquier parte interesada. En armonía con toda la discusión anterior y enfocando la cuestión como una de procedimiento no regulada claramente por la ley ni determinada por los precedentes judiciales, y en cuya decisión debemos estar guiados enteramente por consideraciones de equidad, no vemos razón alguna para sostener la resolución de la corte inferior sobre la cuestión de prescripción.

*Debe dejarse sin efecto la sentencia de la corte de distrito que declaró sin lugar la demanda y devolverse el caso para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Señor Córdova Dávila no intervino.