CARIBE LUMBER AND TRADING CORPORATION, demandante y apelada, *v.* ÁNGEL LUIS MARRERO y DOMINGO RÍOS, demandados y apelante el segundo.

Número 11226.

*Sometido:* 1 de noviembre de 1955. *Resuelto:* 22 de diciembre de 1955.

---

*Benigno Dávila,* abogado del apelante; *Jorge M. Morales* y *Ramón L. Nevares,* abogados de la apelada.

El Juez Asociado Señor Pérez Pimentel emitió la opinión del Tribunal.

La apelada Caribe Lumber & Trading Corporation se dedica y se dedicaba antes de junio 8 de 1950 al negocio de compraventa de materiales de construcción. En consideración a que dicha corporación le extendiera crédito a Ángel Luis Marrero y Eduardo Rodríguez o a cualquiera de ellos, el apelante Domingo Ríos se constituyó en garantizador solidario de estas personas o de cualquiera de ellas hasta la suma de $2,000, incluyendo intereses al tipo que convinieran. La indicada garantía consta en una carta fechada 8 de junio de 1950 dirigida por el garantizador Domingo Ríos a Caribe

Lumber & Trading Corporation.(¹) Después de haber recibido esta garantía, la corporación comenzó a vender materiales de construcción a Ángel Luis Marrero y Eduardo Rodríguez originándose así una cuenta corriente entre ellos.

En 7 de septiembre de 1951 el codeudor Ángel Luis Marrero suscribió y entregó a Caribe Lumber & Trading Corporation cuatro pagarés por las cantidades y fechas de vencimiento que se expresan a continuación:

(*a*) Por $502.50 a vencer el día 7 de octubre de 1951 devengando intereses a razón de 8% anual;

(*b*) Por $505.50 a vencer el 7 de noviembre de 1951, con igual tipo de intereses;

(*c*) Por $507.50 a vencer el 7 de diciembre de 1951 con igual tipo de intereses; y

(*d*) Por $499.06 a vencer el 7 de enero de 1951 y con igual tipo de intereses.(²) Estas obligaciones se otorgaron

---

(¹) El texto de dicha carta es como sigue:

"8 de junio de 1950.

"Caribe Lumber & Trading Corporation
"P. O. Box 1821
"San Juan, Puerto Rico.
"Señores:

"En consideración a que ustedes le extiendan crédito a Ángel Luis Marrero y Eduardo Rodríguez o a cualquiera de ellos, por la presente me constituyo garantizador solidario de estas personas o de cualquiera de ellos a favor de ustedes hasta la suma de dos mil dólares ($2,000.00) incluyéndose interés al tipo que se convenga.

"También me comprometo que a requerimiento de ustedes a aceptar giros de estas personas o de cualquiera de ellos o a suscribir obligaciones solidariamente con ellos o con cualquiera de ellos a favor de ustedes dentro del límite de la cantidad especificada arriba, para facilitar a ustedes el descuento o negociación de dichos valores.

"Atentamente,
"Firmado: Domingo Ríos
"Domingo Ríos."

(²) Posiblemente debido a un error se hizo constar que la fecha de vencimiento de este pagaré era el 7 de enero de 1951 en vez del 7 de enero de 1952. De todos modos, el error de fecha, de existir, no afecta la resolución de este caso. El texto del expresado pagaré es como sigue:

"Montante $499.06                    "Vencimiento 7 de enero de 1951

"Pagaremos solidariamente a Caribe Lumber & Trading Corp. en San Juan, Puerto Rico o a su orden, el día 7 de enero de 1951, la suma de Cuatrocientos noventa y nueve dólares e/ .06/100 Dólares valor recibido á nuestra entera satisfacción y nos obligamos también a pagar intereses de

por "valor recibido" y en cada uno de ellos el deudor convino en que su vencimiento y falta de pago haría exigible y produciría el vencimiento de todas las demás.

Posteriormente Caribe Lumber & Trading Corporation inició este pleito contra Ángel Luis Marrero y Domingo Ríos en cobro de las reseñadas obligaciones. Solamente contestó la demanda el garantizador Domingo Ríos. Después de ciertos trámites y de celebrarse un juicio en los méritos, la corte a quo dictó sentencia condenando a ambos demandados a pagar solidariamente a la demandante la suma de $2,000, más las costas y $350 para honorarios de abogado. No estando conforme con dicha sentencia Ríos apeló.

No hay controversia en cuanto a que las obligaciones están vencidas, no han sido pagadas y representan el balance de la cuenta corriente abierta por la apelada a Ángel Luis Marrero y Eduardo Rodríguez para la compra de materiales de construcción. Sin embargo, el apelante Ríos ha sostenido fundamentalmente, desde el comienzo de este litigio que (1) él no firmó las obligaciones reseñadas en la demanda, hecho éste

---

8% por ciento anual en caso de demora y las costas y gastos que ocasione el cobro de esta deuda y los honorarios del abogado que el tenedor de esta obligación utilice en caso de reclamación judicial.

"Nos sometemos expresamente a la competencia de los Tribunales Insulares de la ciudad de San Juan, Puerto Rico.

"Consentimos expresamente en la renovación o prórroga que se conceda a instancia de cualquiera de los firmantes, quedando solidariamente responsables del balance prorrogado con igual fuerza que la obligación primitiva y renunciamos al derecho de *Homestead*, aviso, presentación y protesto.

"Es expresamente convenido que el vencimiento y falta de pago de esta obligación hará exigible y producirá el vencimiento de toda otra obligación firmada, contraída o adeudada por mí o nosotros o cualquiera de nosotros a favor del tenedor de esta obligación e igualmente se anticipará el vencimiento de la presente, y será exigible inmediatamente que dejemos vencer y no paguemos cualquiera otra obligación que tuviéramos suscrita, contraída o adeudada, junto o separadamente, a favor del tenedor de esta obligación, poniendo en uno y otro caso al tenedor de la misma en aptitud de proceder a su cobro.

"San Juan, Puerto Rico, 7 de Septiembre de 1951.

"Firma espacio para la
   firma de Domingo Ríos     "Firma (Firmado) Ángel Luis Marrero
"Dirección: Toa Baja, P. R.     "Dirección: Box 252—Bayamón"

admitido por la apelada; (2) que la obligación original dimanante de la cuenta corriente, que era la que él garantizó hasta la suma de $2,000, quedó extinguida al ser novada mediante los pagarés firmados por Ángel Luis Marrero y aceptados por la acreedora en pago de la obligación original, y (3) que su garantía quedó extinguida una vez los garantizados pagaron más de $2,000 a la apelada por concepto de compraventa de materiales de construcción. Puede verse la posición asumida por el apelante del siguiente extracto de la moción de reconsideración de sentencia que presentó ante la corte a quo:

"El tribunal indica en sus conclusiones de hecho que el demandado Domingo Ríos al contestar la demanda alegó esencialmente que no garantizó solidariamente las obligaciones que aparecen en los pagarés porque no los suscribió. Debe aclararse además por ser las mismas defensas meritorias que el demandado Domingo Ríos alegó, sostuvo y sostiene además de que no suscribió los pagarés que se cobran que la obligación que garantizó el demandado Domingo Ríos fué una deuda incurrida por Ángel Luis Marrero y su socio Eduardo Rodríguez por compra de materiales, y dicha deuda primitiva o su balance fué sustituída por los pagarés suscritos solamente por Ángel Luis Marrero sin garantía de tercera persona alguna, admitiendo la demandante expresa o tácitamente que el demandado Domingo Ríos había cesado como garantizador de dicho Ángel Luis Marrero.

"No hace referencia el tribunal a los estados de cuenta que mensualmente remitió el demandante al demandado Ángel Luis Marrero y su socio Eduardo Rodríguez sometidos en evidencia que prueban irrefutablemente la existencia de la deuda primitiva, o cuenta corriente por compra de materiales incurrida por Ángel Luis Marrero y su socio Eduardo Rodríguez que en el término de un año demostró que dichos deudores tomaron en materiales de construcción y pagaron a la demandante alrededor de $10,000 y balanceada y liquidada dicha deuda o cuenta el día 7 de septiembre de 1951, la demandante la sustituyó, la novó, admitiendo como único deudor en virtud de los pagarés que reclaman al demandado Ángel Luis Marrero."

874

Igualmente en el alegato presentado en apoyo de este recurso el apelante se expresa así: "Ángel Luis Marrero y Eduardo Rodríguez, trabajando en sociedad, garantizados hasta la suma de $2,000 por Domingo Ríos, desde allá por el mes de junio de 1950 hasta el 7 de septiembre de 1951, sostuvieron una cuenta corriente por compra de materiales de construcción con la Caribe Lumber & Trading Corporation. La garantía de Domingo Ríos, el apelante en este caso, consta de una carta de fecha 8 de junio de 1950 . . . . . Durante un año y dos meses, el volumen de negocios o compras de Ángel Luis Marrero y Eduardo Rodríguez, ascendió alrededor de $10,000; y el día 7 de diciembre de 1951, la demandante Caribe Lumber & Trading Corporation liquidó la cuenta y por el balance de $2,014.56 aceptó en pago, cambio y novación cuatro pagarés suscritos solamente por el deudor Ángel Luis Marrero . . . ." En otra parte de ese mismo alegato, el apelante se expresa así: "También quedó establecido claramente que existió una cuenta u obligación primitiva entre Ángel Luis Marrero y Eduardo Rodríguez actuando en sociedad como deudores por compra de materiales con la demandante como acreedora, y que el importe total de los pagarés es el balance o saldo resultante de la liquidación de la cuenta primitiva al 7 de septiembre de 1951 o sea la fecha en que Ángel Luis Marrero suscribió los pagarés que ahora se cobran."

Conocida ya la posición del apelante, pasemos ahora a considerar las cuestiones fundamentales que plantea en este recurso.

■■ En primer lugar es preciso determinar el carácter de la fianza prestada por Ríos. Ello nos lleva a la fraseología del propio documento de fianza. Dice dicho documento: "En consideración a que ustedes le extiendan crédito a Ángel Luis Marrero y Eduardo Rodríguez o a cualquiera de ellos, por la presente *me constituyo garantizador solidario* de estas personas o de cualquiera de ellas a favor de ustedes hasta la suma de dos mil dólares ($2,000) incluyéndose interés al tipo que se convenga." (Bastardillas nuestras.) Al constituirse en

*garantizador solidario*, Ríos se convirtió en un verdadero co-deudor principal, lo mismo que los fiados. Su responsabi-lidad solidaria para con la acreedora es igual a la de los deudores. *Drug Company of P. R., Inc.* v. *Susoni*, 43 D.P.R. 772, 781; *National City Bank* v. *De la Torre*, 48 D.P.R. 134; *Colón* v. *P. R. & Am. Insurance Co.*, 63 D.P.R. 344, 352, 353. Esto no significa sin embargo, que en lo que respecta a las relaciones entre el fiador y los fiados, el contrato de fianza pierda su naturaleza propia si de los términos del contrato o de la expresión de la voluntad del fiador resultare que su in-tención no fué convertirse en un mero deudor principal sino constituirse tan sólo en fiador, aunque obligándose solida-riamente. *Drug Company of P. R., Inc.* v. *Susoni*, supra; *National City Bank* v. *De la Torre*, supra; *Colón* v. *P. R. & Am. Insurance Co.*, supra. Pero esta última cuestión no está ahora ante nos y una vez resuelto que el fiador Domingo Ríos es un codeudor principal de la apelada, las reglas y prescrip-ciones propias del contrato de fianza, algunas de las cuales invoca el apelante, son inaplicables a los hechos específicos de este caso.

██ La obligación primitiva nacida de la cuenta co-rriente no quedó novada, según sostiene el apelante, por las obligaciones o pagarés suscritos por el codeudor Ángel Luis Marrero. "Las obligaciones pueden modificarse: 1. Va-riando su objeto o sus condiciones principales. 2. Sustitu-yendo a la persona del deudor. 3. Subrogando a un tercero en los derechos del acreedor." Art. 1157 del Código Civil (ed. 1930), 31 L.P.R.A., sec. 3241. Pero para que una obli-gación quede extinguida por otra que la sustituya, es preciso que así se declare terminantemente, o que la antigua y la nueva sean de todo punto incompatibles. Art. 1158 del mismo Código, 31 L.P.R.A. sec. 3242.

Consecuencia de la interpretación de los arts. 1203 y 1204 del Código Civil Español, equivalentes a los arts. 1157 y 1158 del nuestro, es la reiterada doctrina del Tribunal Supremo de España de que la novación, ya se refiera al sujeto o ya al

objeto de la obligación nunca se presume, sino que ha de resultar acreditada sin género alguno de duda. ([3])    No presumiéndose la novación, siempre es de necesidad la declaración terminante de ser la intención y propósito de los contratantes extinguir con la nueva obligación la anterior ([4]) a menos que resulte completa incompatibilidad entre ambas obligaciones, en cuyo caso no es precisa la declaración terminante de la voluntad de novar. ([5])    Ahora bien, para que una obligación quede extinguida por otra que la sustituya es necesario, a falta de la declaración terminante a ese efecto, que la antigua y la nueva sean de todo punto incompatibles, o bien, según el art. 1157, que se varíe su objeto o condiciones principales.    En tal caso para que exista la novación la nueva obligación debe presentar notoria y absoluta incompatibilidad por razón de naturaleza, irreductibilidad o imposibilidad en fin, de cumplimiento simultáneo. ([6])    "La novación comprendida en el Código Civil entre los modos extintivos de las obligaciones,—según sentencia de 11 de junio de 1947 del Tribunal Supremo de España—ofrece la singularidad, que la caracteriza y distingue de los demás, de que sólo de una manera relativa cabe decir que extingue la obligación a que afecta, porque en realidad su propio efecto es el de variarla, modificarla o sustituirla por otra; y como ambas no pueden

---

([3]) Sentencias de 15 de octubre de 1907, 10 de julio de 1917, 5 de diciembre de 1919, 8 de septiembre de 1939, 31 de diciembre de 1941, 25 de abril de 1950, entre otras.

([4]) Comentando el art. 1204 del Código Civil Español, equivalente al 1158 del nuestro, dice Manresa:

"Cuando siendo la novación objetiva se la declare expresamente y aun se la dé ese nombre, pero sin embargo no consista la modificación ni en el objeto ni en las condiciones principales, requisitos exigidos en el artículo precedente, no habrá verdadera y eficaz novación, puesto que los contratantes no pueden variar la naturaleza jurídica de los actos.    Esto no es negar la validez de esas pequeñas modificaciones, pero sí su carácter de novación, según ya se indicó al comentar el artículo anterior." (Manresa, Comentarios al Código Civil Español, 5ta. ed., Tomo VII, pág. 765.)

([5]) Sentencias de 14 de junio de 1916, 5 de diciembre de 1919 y 8 de junio de 1936.

([6]) Manresa, Comentarios al Código Civil Español, (5ta. ed.), Tomo VII, pág. 772.

subsistir, ya que si esto ocurriera no se habría producido la figura jurídica de novación, bien cabe entender que el efecto de ésta es extintivo de la obligación sustituída, siempre que la modificación altere o varíe su esencia, y que únicamente cuando esto no suceda aquélla no se extinguirá, sin que sea dudoso que no es otro el sentido atribuíble al art. 1.203 C.C." (Doctrina Civil del Tribunal Supremo, Tomo III, página 3664.)

Es de rigor aclarar ahora que en este caso no hubo novación por sustitución en la persona del deudor. El apelante parece insinuar que su garantía cubría únicamente a Ángel Luis Marrero y a Eduardo Rodríguez, actuando éstos en sociedad. Sin embargo, la fraseología del documento de garantía es claro y no deja margen a semejante interpretación. Ríos se constituyó en garantizador solidario de Marrero y Rodríguez o de cualquiera de ellos. La deuda, ya fuera contraída por los dos fiados, actuando o no en sociedad, o ya fuera contraída por cualquiera de ellos individualmente, estaba garantizada por Ríos hasta la suma de $2,000. Por virtud del carácter solidario de la garantía, Ríos era un deudor de la apelada, lo mismo que Marrero y siguieron ocupando ese puesto aun después de la entrega de los pagarés, pues como veremos en seguida, la entrega de esos documentos a la acreedora no surtió el efecto de liberarlos de la obligación originaria.

Aún admitiendo que hubo una modificación de la obligación primitiva, por lo menos en cuanto al término de vencimiento y al pacto sobre pago de intereses, tal modificación no altera o varía su esencia y en su consecuencia, no puede producir el efecto extintivo de la novación. Veamos. El término de vencimiento fijado a los cuatro pagarés, es a lo sumo, una prórroga o extensión del plazo para el cumplimiento de la obligación. Pero ese plazo no era una de sus condiciones esenciales. Esto último puede igualmente decirse sobre el abono de intereses. En cuanto a éstos debe recordarse que los que se convinieran quedaban también ga-

rantizados según reza el propio documento de garantía. De todos modos éstas son modificaciones en circunstancias meramente accidentales que no producen el efecto extintivo de la novación en ausencia de una declaración terminante de las partes según ya hemos apuntado. Sentencia del Tribunal Supremo de España de 22 de junio de 1917, 2 de julio de 1917 y 23 de mayo de 1916. Además, la entrega de los pagarés por Marrero a la acreedora no constituyó un pago de la deuda original. *Santini Fertilizer Co.* v. *Jiménez*, 42 D.P.R. 33. Tales documentos eran mera prueba de la existencia de la deuda. *Drug Co. of P. R.* v. *Miranda*, 50 D.P.R. 531. El art. 1124 de nuestro Código Civil (ed. 1930) dispone que la entrega de pagarés a la orden, o letras de cambio u otros documentos mercantiles, sólo producirá los efectos del pago cuando hubiesen sido realizados, o cuando por culpa del acreedor se hubiesen perjudicado. Al no ser realizados los pagarés entregados por Marrero a la acreedora, la obligación original quedó en pleno vigor. *Santini Fertilizer Co.* v. *Jiménez*, supra; *Drug Co. of P. R.* v. *Miranda*, supra; *Roig Commercial Bank* v. *Portela*, 52 D.P.R. 647; Sentencia del Tribunal Supremo de España de 21 de junio de 1946.

La garantía tampoco quedó extinguida por el hecho de que el volumen de las compras efectuadas por los garantizados durante un año y meses ascendiera a más de $10,000. La garantía no estaba limitada a los primeros $2,000 de esas compras, ni a un término fijo. Por lo tanto, ese hecho no libra de responsabilidad al apelante. *Cf. Drug Co. of P. R., Inc.* v. *Susoni*, supra.

Una vez resueltas estas cuestiones, los errores señalados por el apelante bajo los núms. 3 al 15 inclusives, caen por su base.

Los primeros dos errores carecen de mérito. El hecho de que la corte sentenciadora resolviera con demasiada rapidez las cuestiones que se le plantearon, en nada afecta la sentencia apelada, si ésta es correcta.

■ Los restantes errores son también frívolos. La conclusión errónea de la corte a quo al efecto de que todos los pagarés tenían como fecha de vencimiento el 7 de noviembre de 1951, carece de importancia en vista de que el propio apelante admitió durante la celebración de una conferencia con antelación al juicio, que dichos pagarés estaban vencidos a la fecha de la radicación de la demanda.

■ La corte a quo hizo constar en sus conclusiones que el apelante había admitido que la deuda que se reclama se originó en la compra de materiales de construcción por la parte demandada. El apelante ataca como errónea esa conclusión toda vez que él no realizó compra alguna. El supuesto error no conlleva la revocación de la sentencia. Ríos responde como garantizador solidario aunque no haya intervenido directamente en la compra de los materiales.

■ El error referente a los términos de la sentencia en lo que al codemandado Marrero respecta, corresponde a éste levantarlo y no al apelante. De todos modos el pronunciamiento atacado lejos de perjudicar a Marrero lo beneficia, y al apelante en nada le afecta.

■ La corte a quo condenó a los demandados al pago de honorarios de abogado. Al así hacerlo consideró que el apelante Ríos había sido un litigante temerario. En tales circunstancias la condena en honorarios de abogado no es errónea. *Soto* v. *Lugo*, 76 D.P.R. 444 y jurisprudencia allí citada.

*Por las razones expuestas la sentencia apelada será confirmada.*