La Juez Asociada Señora Rodríguez Rodríguez
emitió la opinión del Tribunal.
La parte peticionaria nos solicita resolver que en el presente caso ocurrió una novación modificativa de los términos de un contrato de opción de compraventa. Aduce que al aceptar ciertos pagos tardíos por las prórrogas pactadas en el contrato de opción, los aquí recurridos prestaron su consentimiento tácito para modificar las condiciones del contrato que sujetaban el ejercicio de las prórrogas a un requisito de notificación previa dentro del término pactado y a que la Junta de Planificación no aprobara el proyecto que se proponía desarrollar en el inmueble en controversia. Los tribunales aquí recurridos rechazaron la teoría de novación y decretaron la resolución del contrato de opción. Por entender que al aceptar los pagos para ejercer las prórrogas contenidas en el contrato de opción, los recurridos modificaron los términos de dicho acuerdo para liberar a la peticionaria de cumplir con las condiciones pactadas, revocamos la sentencia apelada y ordenamos que se cumpla con las disposiciones del contrato de opción.
I
Los demandados en el caso de epígrafe, el Ing. Roland Cordero Peña (ingeniero Cordero), el Dr. Elias Najul Bez (señor Najul Bez), sus hijos, María de los Angeles, José Elias, Luisa Priscilla, Neyda Rosa, Zahira Ivelisse y Yazmín Elizabeth Najul Zambrana y la Sra. Marta Romero *720 López (esposa del señor Najul Bez) son dueños en común pro indiviso de una finca sita en el municipio de Isabela.
En 1999 los demandados recurridos otorgaron un acuerdo sobre opción de venta con P.D.C.M., Associates, S.E. (Associates). El acuerdo, de 18 de marzo de 1999, refleja que los demandados recurridos comparecieron como vendedores de la propiedad localizada en el municipio de Isabela. Según los términos del referido contrato de opción de compraventa, el precio de venta de la finca sería $195,000 y Associates prestaría $19,500 por la opción. El término de la opción sería de 180 días. Durante los primeros 90 días de la opción, Associates tendría derecho a retirarse del acuerdo sin penalidad alguna. Ello si surgía algún impedimento en obtener los permisos gubernamentales del proyecto que Associates proponía desarrollar, si la finca resultaba ser propicia a inundaciones o si el costo del relleno resultaba muy oneroso. Pasados estos 90 días, pero antes de los 180 días, Associates podía retirarse con una penalidad de $9,750.
Por otra parte, Associates tendría derecho a ejercer una extensión de 180 días del término de la opción, sujeto al pago de un depósito adicional de $9,750. Tanscurrido dicho período de 180 días, Associates podía obtener una nueva extensión de 90 días, previo el pago de $9,750 adicionales. Associates debía solicitar toda extensión al período original por escrito, 20 días antes de extinguirse el plazo que estuviese transcurriendo en el momento. De no realizarse la compraventa dentro del último período adicional, los demandados recurridos se adjudicarían todo el dinero depositado.
Finalmente, las partes estipularon que las extensiones al período original de opción se concederían si a la fecha de éstas solicitarse, la Junta de Planificación no había aprobado la consulta del proyecto que Associates pretendía realizar. Una vez la Junta de Planificación aprobara la consulta, Associates tendría 30 días calendario para formalizar la compraventa.
El contrato antes reseñado se formalizó el 18 de marzo de 1999. Por lo tanto, el primer término de la opción vencía *721 el 14 de septiembre de 1999. De solicitar la primera extensión de 180 días, el contrato estaría vigente hasta el 12 de marzo de 2000, y de ejercer la segunda extensión, el contrato estaría vigente hasta el 10 de junio de 2000.
El 18 de marzo de 1999 Associates hizo un primer pago de $19,500 por el depósito de la opción. El referido pago se hizo mediante cheque de P.D.C.M. Associates S.E., girado a nombre de cada uno de los demandados recurridos, quienes lo endosaron. El cheque se depositó en el banco.
El 12 de noviembre de 1999, vencido el primer término de la opción, Associates realizó un segundo pago mediante cheque por la cantidad de $9,750. El pago se hizo a nombre de cada uno de los demandados recurridos y se hizo constar que éste pretendía cumplir con la extensión de la opción de compraventa. Todos los demandados recurridos endosaron el cheque, que también se depositó en el banco.
El 18 de marzo de 2000, luego de que el ingeniero Cordero le informara al Sr. Israel Kopel, dueño y representante de Associates, que el tiempo de la opción había expirado, el señor Kopel giró un cheque personal por $9,750. Hizo constar que el cheque era por el ejercicio de la segunda extensión. Sin embargo, a diferencia de los primeros dos cheques, éste se giró a nombre del Sr. Elias Najul Bez, de su esposa, la Sra. Marta Romero López, y del ingeniero Cordero Peña. Estos endosaron el cheque.
No está en controversia que, previo al envío de los cheques por el ejercicio de las extensiones de la opción, Associates no sometió una consulta de ubicación ante la Junta de Planificación. Tampoco envió una notificación escrita a los demandados recurridos manifestando su intención de extender el término de la opción.
Durante el mes de junio de 2000, el Sr. Israel Kopel intercambió comunicaciones escritas con el Ing. Rolando Cordero para tramitar la compraventa. Para ello, el Lie. Ramón Banuchi Eurite redactó un borrador de escritura de compraventa. Sin embargo, la compraventa no se firmó. Surge de las admisiones de las partes en sus escritos que *722 una de las demandadas, la Sra. María de los Ángeles Najul, se opuso a realizar el negocio.
Ante la imposibilidad de perfeccionar la compraventa, Associates presentó demanda sobre injunction por incumplimiento de contrato contra el Grupo Najul. En esencia, alegó que ejerció oportunamente su derecho de opción dentro del término de la primera opción y que no se otorgó la escritura de compraventa porque la Sra. María de los Ángeles Najul Zambrana se negó. Solicitó el cumplimiento específico del contrato de opción, es decir, que los demandados otorgaran la escritura de compraventa y transfirieran el dominio de la finca. Además, reclamó una partida de daños.
Luego de celebrar el juicio en su fondo, los demandantes peticionarios reconocieron que no existía prueba de daños, por lo que circunscribieron la controversia al aspecto de la novación de los términos del contrato de opción. Así las cosas, el Tribunal de Primera Instancia declaró “no ha lugar” la demanda. Determinó que no se configuró una novación en las condiciones del contrato de opción, pues no hubo prueba de que los demandados Najul Zambrana consintieran a ella. A la luz de ello, decretó la disolución del contrato de opción y determinó que los demandados debían devolver el dinero pagado por Associates y por el señor Kopel.
Inconforme, Associates acudió al Tribunal de Apelaciones. Dicho foro apelativo intermedio confirmó la sentencia apelada. En primer lugar, el tribunal entendió que en el presente caso no hubo novación, pues aun cuando el señor Najul Bez recibió los cheques de los demandantes peticionarios, no existía prueba de que sus hijos, los codemandados Najul Zambrana, consintieran a recibir dichos pagos. Es decir, concluyó que el expediente estaba huérfano de prueba que estableciera la intención clara y manifiesta de los codemandados Najul Zambrana de novar las condiciones pactadas.
En segundo lugar, el Tribunal de Apelaciones puntualizó que el tercer cheque no se hizo a nombre de los demandados Najul Zambrana y que éste no fue suscrito por Asso *723 ciates, sino por el Sr. Israel Kopel en su carácter personal. Ante el hecho que varios de los comuneros estuvieron ausentes de dicha transacción, el Tribunal de Apelaciones concluyó que dicha transacción entre Associates, el señor Najul Bez y el ingeniero Cordero, no podía obligar a los codemandados Najul Zambrana quienes, según dicho foro, tampoco otorgaron un mandato a favor del señor Najul Bez o del ingeniero Cordero. Es decir, el tribunal concluyó que no se podía concluir que los hermanos Najul Zambrana consintieron a recibir de forma tardía el tercer pago hecho por el Sr. Israel Kopel.
Insatisfecho con la determinación del Tribunal de Apelaciones, Associates presentó recurso de certiorari ante este Tribunal. El 16 de marzo de 2007 expedimos el auto. Con el beneficio de los alegatos de ambas partes, procedemos a resolver.
II
Es la posición de la demandante peticionaria que en el presente caso ocurrió una novación de los términos del contrato de opción. Sostiene que, mediante sus actos, los recurridos novaron las condiciones pactadas para ejercer las prórrogas del contrato de opción de compraventa y que ello tuvo el efecto de liberarla de las condiciones pactadas. Resalta que los recurridos aceptaron los pagos tardíos sin objeción alguna, por lo que se debe concluir que éstos renunciaron a su derecho a resolver el contrato y están impedidos de negarse a vender la propiedad.
Por otra parte, los demandados recurridos plantean que los demandantes peticionarios no presentaron prueba alguna tendente a establecer que todos los demandados, particularmente los hermanos Najul-Zambrana, aceptaron las actuaciones de los peticionarios para novar la obligación original. Es más, aducen que nunca aceptaron los incumplimientos de la parte peticionaria y que la omisión de cumplir con las condiciones del contrato de opción provocó la extinción del derecho de opción.
*724 Veamos las características principales del contrato de opción y los contornos de la figura de la novación.
III
En ausencia de regulación expresa del contrato de opción en el Código Civil, hemos acuñado una definición de dicho contrato. Lo hemos definido como el “convenio por el cual una parte (llamada concedente, promitente u optatario) concede a la otra (llamada optante), por tiempo fijo y en determinadas condiciones, la facultad, que se deja ex-clusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal”. (Citas omitidas.) Mayagüez Hilton Corp. v. Betancourt, 156 D.P.R. 234, 246 (2002). Véase Atocha Thom McAn, Inc. v. Registrador, 123 D.P.R. 571, 583 (1989). De este contrato nace un derecho que confiere al optante la facultad de decidir, a su arbitrio y dentro de un plazo cierto, si celebra el contrato por el que se opta. Mayagüez Hilton Corp. v. Betancourt, supra. Véase, además, J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1982, T. II, Vol. II, págs. 48-49.
La opción está atada a un contrato definitivo que las partes han delimitado previamente. Mayagüez Hilton Corp. v. Betancourt, supra. Por ejemplo, como ocurre en el presente caso, el contrato de opción le puede conceder al optante la posibilidad de decidir unilateralmente si perfecciona una compraventa, cuyos contornos se han detallado en el contrato de opción. Mayagüez Hilton Corp. v. Betancourt, supra, pág. 250; Puig Brutau, op. cit., pág. 50.
Por otro lado, el derecho de opción no sólo concede al optante la facultad de perfeccionar el contrato definitivo mediante la aceptación de la opción, sino que impone al concedente la obligación de no frustrar el derecho del que goza el optante. Mayagüez Hilton Corp. v. Betancourt, supra, pág. 250. Véase, además, J. Castán Tobeñas, Derecho *725 civil español, común y foral, 14ta ed., Madrid, Ed. Reus, 1988, T. IV, págs. 54r-55.
IV
Es norma claramente establecida en nuestro ordenamiento que la novación es una causa de extinción de las obligaciones. Art. 1110 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3151. No obstante, hemos reconocido que la novación incluye tanto la modalidad que tiene efectos ex-tintivos, como la novación modificativa en virtud de la cual subsiste una obligación alterada. Véanse: Mun. de San Juan v. Prof. Research, 171 D.P.R. 219 (2007); United v. Villa, 161 D.P.R. 609 (2004); Miranda Soto v. Mena Eró, 109 D.P.R. 473, 478 (1980).
La novación extintiva se configura cuando las partes lo declaran en forma terminante o cuando la intención de novar se deriva de la incompatibilidad absoluta entre la obligación original y la nueva. Art. 1158 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3242; G. & J., Inc. v. Doré Rice Mill, Inc., 108 D.P.R. 89, 91 (1978). Por otra parte, se concreta la novación modificativa de una obligación cuando no exista la intención de extinguir una obligación y sustituirla por otra, o cuando medie compatibilidad entre la obligación original y la nueva. United v. Villa, supra, pág. 619.
El comentarista Manuel Albaladejo indica que cuando quede patente el ánimo de cambio pero no conste “la voluntad de que una [obligación] se extinga y otra nazca, entonces se entiende que subsiste la misma obligación, pero modific[ada\”. (Énfasis en el original.) M. Albaladejo, Derecho Civil, 8va ed, Barcelona, Ed. Bosch, 1989, T. II, Vol. 1, pág. 339. En modo análogo, postula Antonio Hernández-Gil que “la novación meramente modificativa, en cuanto a su constitución, se rige por las reglas generales de la exteriorización e interpretación de la voluntad, no requiriéndose, por lo tanto, un particular animus novandi”. A. Hernández Gil, El ámbito de la novación ob *726 jetiva modificativa, 45 Rev. Der. Priv. 797, 801 (octubre 1961).
El animus novandi es elemento indispensable de la novación extintiva. Mun. de San Juan v. Prof. Research, supra. Se trata de la declaración expresa y terminante que el Art. 1158 del Código Civil de Puerto Rico exige para ex-tinguir una obligación. Warner Lambert Co. v. Tribunal Superior, 101 D.P.R. 378, 389-390 (1973). Véase, además, Hernández-Gil, supra, pág. 799. Según indicamos en United v. Villa, supra, la vertiente modificativa de la novación no precisa el animus novandi para alterar una obligación. En dicha ocasión aclaramos que la novación modificativa se configura cuando falta la voluntad expresa de las partes —animus novandi— o cuando existe compatibilidad entre las obligaciones. United v. Villa, supra, pág. 619. Sin embargo, también señalamos que la modificación de la obligación no queda al arbitrio de una de las partes. Es decir, la ausencia del animus novandi no implica que nuestro ordenamiento admita la modificación unilateral de una obligación.
En suma, para su constitución, la novación modificativa no exige encontrar la voluntad expresa de extinguir una obligación por otra. Empero, es imprescindible hallar un ánimo de cambio. De esta forma, al determinar si nos encontramos ante un supuesto de novación modificativa, es necesario interpretar la voluntad de las partes. Ello, debido a que la novación encierra un asunto de intención que debemos inferir de las circunstancias de cada caso y de la voluntad de las partes. Warner Lambert Co. v. Tribunal Superior, supra, pág. 389.
En el pasado hemos indicado que no existe novación extintiva cuando se confieran facilidades para el cumplimiento de la obligación primitiva como, por ejemplo, cuando se conceden prórrogas o plazos fraccionados, salvo que el plazo sea una condición esencial en cuyo caso se entraría en el ámbito de la novación por incompatibilidad. Miranda Soto v. Mena Eró, supra, págs. 479-480. Véase, ade *727 más, Castán Tobeñas, op. cit, 15ta ed., T. III, pág. 441. Hemos reconocido, además, que un cambio en la duración del término de un contrato implica una novación modificativa, pues no comporta una variación en la esencia de la obligación. Atocha Thom McAn, Inc. v. Registrador, supra, pág. 582; Caribe Lumber Corp. v. Marrero, 78 D.P.R. 868, 877 (1955).
V
En el presente caso, la determinación de si ocurrió una novación modificativa de los términos del contrato de opción requiere examinar la conducta de las partes a la luz de la prueba que obra en el expediente. La controversia medular gira en torno a si la aceptación de los pagos tardíos por la prima correspondiente al ejercicio de las prórrogas tuvo el efecto de extender la vigencia del contrato de opción a pesar de que la demandante peticionaria —como optante— efectuó los pagos una vez vencidos los plazos correspondientes y sin satisfacer las condiciones pactadas para ello, a saber, notificar el ejercicio de la prórroga con veinte días de anticipación y que la Junta de Planificación no aprobara la consulta del desarrollo propuesto.
No existe controversia en torno al hecho de que los demandados recurridos aceptaron un primer pago por el depósito de la opción. Vencido el término original de la opción y el término para notificar el ejercicio de la primera prórroga, Associates realizó un segundo pago mediante cheque por la suma pactada en el contrato. El cheque se dirigió a nombre de cada uno de los demandados recurridos, quienes lo endosaron. Así, aceptaron este segundo pago hecho fuera del término concedido en el contrato de opción. Vencida la primera prórroga de 180 días, se hizo un tercer pago. Esta vez, el Sr. Israel Kopel, dueño y accionista principal de Associates, suscribió el cheque y lo hizo a nombre de tres de los demandados peticionarios, a saber, el ingeniero Cordero, el señor Najul Bez y la Sra. Marta Romero. Por lo tanto, no incluyó a los demandados Najul Zambrana.
*728 Adviene incontrovertible, entonces, que los demandados recurridos aceptaron el cheque correspondiente a la primera prórroga luego de vencido el plazo para ello. No obstante, existe controversia sobre la aceptación del pago correspondiente a la segunda prórroga.
Para sustentar su reclamo a los efectos de que los demandados peticionarios aceptaron el último cheque, la peticionaria descansa en el testimonio prestado por el señor Najul Bez en su deposición. En lo pertinente a la controversia que nos ocupa, el señor Najul Bez manifestó en la deposición que sus hijos tenían conocimiento de que él recibió tres cheques y que también conocían que el tercer cheque se expidió en relación con la opción. Apéndice, págs. 116-117. Reconoció, además, que no les explicó a sus hijos que el tercer cheque sólo se giró a nombre de tres personas. Id., pág. 117. El Tribunal de Apelaciones le negó “credibilidad” a las declaraciones del señor Najul Bez en la deposición. Entendió que “dicho testigo no fue presentado en juicio” y que para probar la aceptación del tercer pago, la demandante peticionaria tenía que haber presentado el testimonio vivo del señor Najul Bez en el juicio. Id., pág. 347. Al así proceder, incidió el foro apelativo intermedio. Veamos.
La Regla 29.1 de Procedimiento Civil rige la admisibilidad de una deposición en un juicio de carácter civil. 32 L.P.R.A. Ap. III. Dicha regla condiciona la admisibilidad de las deposiciones a varios requisitos de umbral. Además, establece varias condiciones que regulan los propósitos para los cuales se puede utilizar una deposición en un juicio o vista.
En primer término, la Regla 29.1 de Procedimiento Civil, supra, dispone que se podrá utilizar una deposición o parte de ella en un juicio o vista, si su contenido es admisible de acuerdo con las Reglas de Evidencia, aplicadas como si el deponente estuviera testificando en corte. Dispone, además, que sólo se podrá utilizar una deposición contra una parte que hubiese estado presente o representada en la *729 toma de la deposición, o hubiese sido debidamente notificada de dicho acto. Id.
En segundo término, la Regla 29.1 de Procedimiento Civil, supra, regula las circunstancias específicas en las cuales se puede utilizar la deposición. En su inciso (b), la referida regla dispone que “[Z]a deposición de una parte, o la de cualquier persona que en la fecha en que se tomó la deposición era un oficial, funcionario, director o agente administrador o persona designada bajo la Regla 27.5 para testificar a nombre de una corporación pública o privada, sociedad, asociación o agencia gubernamental, que sea parte en el pleito, podrá utilizarse por la parte adversa para cualquier propósito”. (Énfasis nuestro.) Id. Es decir, se podrá utilizar la deposición de una parte para cualquier propósito, siempre que ésta sea admisible bajo las Reglas de Evidencia. Nótese que este inciso no sujeta la admisibilidad de la deposición como prueba sustantiva a la no disponibilidad del testigo.
En F.D.I.C. v. Caribbean Mktg. Ins. Agency, 123 D.P.R. 247, 256 (1989), aclaramos que la deposición de una parte adversa es admisible al amparo del inciso (b) de la Regla 29.1 como prueba directa o sustantiva y que la única cortapisa a su admisibilidad es que el contenido de ésta sea admisible bajo las Reglas de Evidencia. En dicho caso resolvimos que las declaraciones de los demandados en ciertas deposiciones eran admisibles bajo la Regla 29.1(b) y que, además, las declaraciones contenidas en dichas deposiciones eran admisibles, a su vez, como admisiones de parte, puesto que constituían una excepción a la regla de exclusión de prueba de referencia. Regla 62(A) de Evidencia, 32 L.P.R.A. Ap. IV.
En el presente caso, el Tribunal de Apelaciones determinó que la demandante peticionaria debió presentar el testimonio del señor Najul Bez en juicio. Aun cuando podemos discernir que nuestro derecho probatorio favorece que los testigos comparezcan al juicio y estén sujetos allí a contrainterrogatorio, no podemos olvidar que la Regla *730 29.1(b) de Procedimiento Civil, supra, permite presentar la deposición de una parte, sin necesidad de que el testigo comparezca al juicio y sin exigir que el promovente acredite que el testigo no está disponible en el juicio. Vemos entonces que, por vía de la Regla 29.1 de Procedimiento Civil, la deposición de una parte es admisible como excepción a la regla de exclusión de prueba de referencia.
Reconociendo que nuestro ordenamiento rechaza admitir declaraciones hechas fuera de corte para probar la verdad de lo aseverado, puesto que la parte contra quien se ofrece no ha podido confrontar al declarante mediante su testimonio en corte bajo juramento, el legislador optó por permitir que se admita la deposición si la parte contra la que se ofrece estuvo presente en la deposición, estuvo representada o recibió una debida notificación sobre la toma de deposición. Véase, sobre la regla de exclusión de prueba de referencia, E.L. Chiesa, Tratado de Derecho Probatorio, [ed. de autor], 1998, T. II, págs. 615-617.
Así, nuestro ordenamiento confiere confiabilidad a la declaración hecha en una deposición en la que la parte adversa estuvo presente o estuvo representada, por lo que la deposición será admisible sin necesidad de que el testigo comparezca a la vista. Ello, claro está, sujeto a que las declaraciones contenidas en la deposición sean admisibles conforme a las Reglas de Evidencia. Recordemos, además, que en una deposición, como ocurrió en este caso, quien testifica está sujeto a ser interrogado y contrainterrogado por los representantes de las partes. Por lo tanto, erró el Tribunal de Apelaciones al determinar que no procedía evaluar el valor probatorio de las declaraciones del señor Najul Bez en su deposición, bajo el fundamento de que era necesario presentar su testimonio en corte abierta.
El estudio de la trascripción de la vista celebrada en el presente caso revela que el foro primario admitió en evidencia la deposición del señor Najul Bez. El señor Najul Bez no compareció al juicio debido a su precaria condición *731 de salud.([1]) Tras varias argumentaciones de derecho probatorio, el Tribunal de Primera Instancia admitió la deposición y ambas partes tuvieron la oportunidad de leer diferentes partes de ésta para efectos del expediente. Véanse: Transcripción de la vista del 5 de marzo de 2003, págs. 35-42; Vista del 6 de junio de 2003, págs. 29-38. En virtud de ello, se admitieron las declaraciones del señor Najul Bez en torno a que sus hijos conocían que se hizo el tercer pago por el contrato de opción y a que el señor Najul Bez no les explicó que el cheque sólo se había girado a nombre de tres personas. También se admitieron sus declaraciones a los efectos de que al momento de otorgar la compraventa, sus hijos se opusieron debido a los incumplimientos de la demandante con el contrato. Id., págs. 37-38.
A la luz del contendido de la deposición del señor Najul Bez, es menester concluir que ésta era admisible al amparo de la Regla 29.1(b) de Procedimiento Civil. No sólo fue admitida en el juicio como prueba, sino que no encontramos razón alguna para determinar que era inadmisible, puesto que se trata de la deposición de una parte y fue presentada en el juicio por la parte adversa. Además, los demandados recurridos estuvieron representados en la toma de deposición por el abogado que para esa fecha los representaba en el pleito.
Luego de aquilatar el valor probatorio de la declaración del señor Najul Bez en tanto adujo que sus hijos, los demandados Najul Zambrana, tenían conocimiento de que se realizó el tercer pago por la prórroga de la opción, entendemos que en efecto, los demandados recurridos conocían que la demandante peticionaria realizó el pago correspondiente a la tercera prórroga. A pesar de que el señor Najul Bez hizo esta declaración en su carácter individual, los demandados Najul Zambrana no presentaron prueba testifical para rebatirla, pues sometieron su caso luego de que la *732 demandante peticionaria desfiló su prueba. Ante ello, la declaración del señor Najul Bez estableció que los demandados Najul Zambrana conocieron que la demandante peticionaria efectuó el último pago de la prórroga.
Lo anterior, en unión a la prueba documental que obra en autos y a las demás actuaciones de las partes sobre las que no hay controversia, nos lleva a concluir que los demandados recurridos aceptaron los pagos tardíos por las prórrogas del contrato de opción y de esta forma se configuró una novación de los términos y condiciones de dicho contrato. Veamos.
El plazo original del contrato de opción vencía el 14 de septiembre de 1999. El 12 de noviembre de 1999 los demandados peticionarios aceptaron un segundo pago por la primera prórroga pactada para el contrato de opción. En dicho momento los demandados recurridos no solicitaron resolver el contrato de opción ni alegaron que el plazo de la opción había vencido. Por lo tanto, prestaron su consentimiento para extender la vigencia de la opción por 180 días adicionales, a pesar de que el pago fue tardío y de que la demandante peticionaria no cumplió con las demás condiciones del ejercicio de la prórroga.
Así las cosas, vencida la segunda prórroga, el señor Kopel, socio administrador y accionista principal de Associates, efectuó un tercer pago. Giró un cheque de la cuenta personal que posee con su esposa. A su vez, tres de los demandados endosaron y cambiaron el cheque. Según surge de la deposición del señor Najul Bez, los demandados Najul Zambrana conocían que se había efectuado el tercer pago de la opción. A pesar de ello, no fue hasta el momento en que la demandante peticionaria intentó otorgar la escritura de compraventa, que los demandados se negaron a vender la propiedad, invocando el incumplimiento de las condiciones pactadas en el contrato de opción. Es decir, a pesar de conocer que se habían realizado dos pagos sin cumplir con las condiciones del contrato respecto a las prórrogas, los demandados peticionarios, incluyendo a los her *733 manos Najul Zambrana, no se opusieron a recibir los pagos de la prórroga al contrato de opción.
Todo lo anterior nos lleva a concluir que nos encontramos ante una novación modificativa tácita de los términos y las condiciones del contrato de opción. Las circunstancias del presente caso demuestran que los demandados condonaron los pagos tardíos, la falta de notificación oportuna y la omisión de acreditar que la Junta de Planificación no había aprobado la consulta del proyecto. Conforme indica el comentarista español, Luis Diez-Picazo, ocurre una declaración de voluntad tácita cuando “el sujeto no manifiesta de modo directo su voluntad mediante los signos adecuados para ello, sino que realiza una determinada conducta que por presuponer necesariamente tal voluntad es valorada como declaración por el ordenamiento jurídico”. L. Diez-Picazo, Sistema de Derecho Civil, 7ma ed., Madrid, Ed. Tecnos, 1989, Vol. I, pág. 507. Por nuestra parte, hemos indicado que el elemento crucial del consentimiento tácito es la conducta de la persona, la cual debe revelar de forma inequívoca, la voluntad de consentir. Teachers Annuity v. Soc. de Gananciales, 115 D.P.R. 277, 290 (1984).
La conducta de las partes en este caso demuestra la voluntad de modificar los términos del contrato de opción. Los demandados recurridos recibieron sin objeción los pa-gos de la prórroga del contrato de opción. A pesar de que los demandados Najul-Zambrana no endosaron el tercer cheque, la prueba que obra en autos demuestra que ellos conocían que se había realizado dicho pago por la opción y no se opusieron a éste. Tampoco solicitaron resolver el contrato de opción ni alegaron que el derecho de opción se había extinguido. Al así actuar, modificaron los términos y condiciones del contrato de opción y relevaron a la demandante peticionaria de las condiciones para el ejercicio de la opción. Como consecuencia de ello, se mantuvo vigente el contrato durante los términos pactados para las prórrogas, es decir, hasta el 10 de junio de 2000. Los recurridos estaban impedidos de negarse a otorgar la escritura de compraventa.
*734 El hecho de que el Sr. Israel Kopel, en lugar de Associates, emitiera el tercer cheque no obliga una determinación distinta. Como es sabido, en nuestro ordenamiento se reconoce la figura del pago por tercero. Una vez el tercero con interés paga una deuda, se subroga en los derechos del acreedor original. Art. 1163 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3247; Eastern Sands, Inc. v. Roig Comm. Bank, 140 D.P.R. 703, 713-717 (1996). En calidad de accionista principal y socio administrador de Associates, el Sr. Israel Kopel efectuó un pago válido por la opción. Lo hizo con fondos pertenecientes a la Sociedad de Bienes Gananciales que compone junto a su esposa. Sin duda, el Sr. Israel Kopel poseía un interés en el cumplimiento de las disposiciones del contrato de opción. Por lo tanto, el efecto inmediato de dicho pago es que subrogó al señor Kopel y a la Sociedad de Bienes Gananciales en los derechos de Associates. El pago por tercero sólo representó una modificación en la figura del acreedor, por lo que el pago es válido y tuvo el efecto de mantener vigente el contrato de opción y la correlativa obligación de respetarlo.
Por los fundamentos antes expuestos, se revoca la sentencia del Tribunal de Apelaciones y se declara “con lugar” la demanda. Se ordena a la parte demandada recurrida vender a la demandada peticionaria el inmueble, según los términos pactados en el contrato de opción.

Se dictará sentencia de conformidad.

(1) El representante legal del señor Najul Bez presentó un certificado médico acreditando que su representado no podía comparecer por su condición de salud. Además, se indicó que su avanzada edad también le impedía comparecer al juicio. Apéndice, págs. 28-32.